Kevin McDONALD, Defendant Below, Appellant,

v.

STATE of Delaware, Plaintiff Below, Appellee.

No. 660, 2006.

Supreme Court of Delaware.

Submitted: Jan. 30, 2008.
Decided: May 2, 2008.

---

**33.** *Bailey v. State*, 521 A.2d 1069, 1077 (Del. 1987).

Kevin M. Howard, Esquire, Young, Malmberg & Howard, P.A., Dover, DE, for appellant.

John Williams, Esquire, Department of Justice, Dover, DE, for appellee.

Before STEELE, Chief Justice, HOLLAND, BERGER, JACOBS, Justices and NOBLE, Vice Chancellor,[1] constituting the Court en Banc.

HOLLAND, Justice, for the majority:

Following a jury trial in the Superior Court, the defendant-appellant, Kevin McDonald, was convicted of Trafficking Cocaine and Possession with Intent to Deliver a Schedule II Controlled Substance. In this appeal, McDonald challenges the Superior Court's denial of his motion to suppress the evidence that was seized following a traffic stop of the motor vehicle in which McDonald was a passenger. McDonald contends that the traffic stop violated the Fourth Amendment of the

---

1. Pursuant to art. IV, § 12 of the Delaware Constitution and Supreme Court Rules 2 and 4(a) to fill up the quorum as required by art. IV, § 12 of the Constitution.

United States Constitution and Article I, Section 6 of the Delaware Constitution because the police did not have probable cause to stop the vehicle for a traffic violation.

We have concluded that McDonald's Fourth Amendment argument is meritorious.[2] Accordingly, his motion to suppress should have been granted, and the judgments of the Superior Court must be reversed. This matter will be remanded for further proceedings in accordance with this opinion.

### Facts

On August 12, 2005 at approximately 12:15 a.m., Corporal David S. Hake[3] of the Delaware State Police entered the parking lot of the Canterbury Shore Stop in an unmarked patrol car. While there, he observed a lawfully parked Honda Accord with a driver and passenger seated inside. Corporal Hake also observed a third person standing by the vehicle. He did not notice any illegal activity involving the three individuals.[4] As he drove by the Honda Accord, Corporal Hake ran the vehicle's registration number, but inadvertently transposed some of the digits. Because of that error, the system indicated that the vehicle was unregistered. In fact, the vehicle was at all relevant times properly registered with the State of Delaware.

Corporal Hake continued to observe the automobile and its passengers. As he was exiting the Canterbury Shore Stop private parking lot, the driver failed to use his turn signal to indicate he was turning right onto the public roadway. Believing that failure to use a turn signal constituted a

traffic violation, Corporal Hake immediately activated his emergency equipment and stopped the vehicle. As a result of events that transpired after the stop, the driver and the passenger (McDonald) were transported back to the police station. The motor vehicle was towed.

Later that same day, Corporal Hake obtained a warrant for McDonald's arrest from the Justice of the Peace Court. The arrest warrant charged McDonald with nine criminal offenses. The arrest warrant was issued based upon Corporal Hake's sworn affidavit recounting the events that had occurred several hours earlier that day, as follows:

> Your affiant CPL HAKE can truly state that: On Friday 08/12/05 at approximately 0015 hours, I was patrolling U.S. 13 north of Felton when I entered the Shore Stop parking lot at the intersection of U.S. 13 and Irish Hill Road (CR 31), I observed a Honda Accord parked at the front of the store and there was a subject on foot near the car. I passed the Accord and continued northbound thru the parking lot. After I passed the Accord, the Accord began to back up and it headed towards the exit at the intersection of Irish Hill Road. I **parked in the Shore Stop parking lot and the Accord passed me and headed towards the exit. The operator failed to activate his turn signal and then the operator made a right turn onto Irish Hill Road. I activated my emergency equipment and stopped the Accord (DE REG. 438917) on Irish Hill Road between U.S. 13 and the intersection of Canterbury Road.**

2. Consequently, it is unnecessary to address McDonald's claim under the Delaware Constitution.

3. Corporal Hake was assigned to the Governor's Task Force in Kent County, a drug enforcement unit.

4. Corporal Hake later testified at the suppression hearing, however, that the fact that these individuals were together at a location known for drug activity is what first drew his attention to the vehicle.

**I approached the Accord and I contacted the operator.** The operator identified himself as Juan Lucas (04/07/83). The front passenger identified himself as Mikell Young and he stated that his date of birth was 10/11/74. I recognized the front passenger as being Kevin McDonald because I had contacted him during the month of July 2005. I asked Def. McDonald how they knew each other and he advised that they were cousins. Def. Lucas informed me that they were cousins and that his passenger was in fact Mikell Young. Def. Lucas was unable to provide valid proof of insurance for the Accord. P.O. Willard responded to the traffic stop to assist. I conducted a Deljis inquiry which revealed that Kevin McDonald had an active capias. I had Def. McDonald exit the vehicle and I detained him without incident. I asked Def. McDonald if there was anything illegal in the car and he advised that there was not. Def. McDonald advised that it was his uncle Eric McDonald's vehicle and that I could search the car. Then, I had Def. Lucas exit the vehicle and I detained him without incident. I conducted a patdown on Def. Lucas and I located six fireworks in his pockets. Def. Lucas also had a hollowed blunt in his pocket, which is the type that is commonly used to smoke marijuana. I asked Def. Lucas if there was anything illegal in the car and he advised that there was not. Def. Lucas advised that I could search the car.

I conducted a search of the vehicle and I located the following evidence: approximately 0.1 grams of marijuana between the front seats, approximately 0.1 grams of loose cocaine on the driver's seat and on the front passenger seat, and a cigar that is typically used to smoke marijuana. I conducted field tests on the suspected marijuana and the suspected cocaine and the substances field tested positive.

After the vehicle was removed by Chambers towing, I transported Def. Lucas to Troop 3. P.O. Willard transported Def. McDonald to Troop 3.

At Troop 3, I conducted a strip search on Def. McDonald. During the search, I located a plastic baggie pinned to def. McDonald's boxer shorts with a safety pin. The baggie contained a plastic baggie of crack cocaine which weighed approximately 14.8 grams and it contained a baggie of marijuana which weighed approximately 2.5 grams. A search of Def. McDonald's socks revealed approximately 2.9 grams of marijuana and $350.00 is U.S. Currency.

Based upon my training and experience, the amount of crack cocaine which was located on Def. McDonald's person is consistent with the sale of crack cocaine. Based upon my training and experience, the amount of marijuana and the way in which it was packaged is consistent with the sale of marijuana. The $350.00 in U.S. Currency in Def. McDonald's sock along with the marijuana is also an indicator of the sale of illegal drugs.

Def. Lucas continued to claim that his passenger's name was Mikell Young.

### Motion to Suppress

Before his trial, McDonald moved to suppress the evidence seized during the traffic stop and subsequent search incident to his arrest. McDonald argued that the stop violated his Fourth Amendment guarantee to be free from "unreasonable searches and seizures."[5] McDonald contended that the police did not have probable cause to stop the Honda Accord in which McDonald was a passenger. Specifically, McDonald urged, the alleged turn signal violation for which the Honda was

---

5. U.S. Const. amend. IV.

pulled over could not have formed the requisite probable cause to stop the vehicle because Delaware's Motor Vehicle Code does not require a driver to signal when entering a public highway from private property. Thus, McDonald argued, if no traffic violation was committed, there was no legal justification for the stop and all evidence resulting there from should be suppressed.

In denying McDonald's motion, the Superior Court stated: "I think that leaving [the parking lot] without a turn signal in and of itself would seem to present, at best, only a very questionable suspicion, but it's not in and of itself." After concluding that the alleged turn signal violation alone was "a very questionable suspicion" to stop the motor vehicle, the Superior Court used a "totality of the circumstances" analysis. The Superior Court concluded that the combination of the two people in the vehicle with a third standing nearby at a store in an area known for criminal activity, together with the registration issue and the vehicle's "unprovoked flight" from the Shore Stop parking lot, provided a reasonable articulable basis to stop the vehicle. The Superior Court's decision did not identify what criminal activity was reasonably suspected from those facts. The decision also did not indicate what facts formed the basis for the conclusion that Juan Lucas executed an "unprovoked flight" from the lot. Nor did the Superior Court's ruling explain why those facts were relevant, since Corporal Hake did not stop the motor vehicle for any of those reasons.

### Fourth Amendment and Traffic Violations

The Fourth Amendment of the United States Constitution guarantees "the right of the people to be secure in their persons, houses, papers and effects, against unreasonable searches and seizures." The United States Supreme Court has held that temporary detentions of persons during a motor vehicle stop by police constitutes a "seizure" of "persons" within the meaning of the Fourth Amendment.[6] Accordingly, the Supreme Court has also held that a traffic stop must satisfy the Fourth Amendment requirement that it not be "unreasonable" under the circumstances.[7] "As a general matter, the decision to stop an automobile is reasonable when the police have probable cause to believe that a traffic violation has occurred."[8]

The United States Supreme Court has summarized its Fourth Amendment cases as "foreclose[ing] any argument that the constitutional reasonableness of the traffic stop depends on the actual motivations of the individual officers involved."[9] The Supreme Court has held that a traffic violation arrest is "not rendered invalid by the fact that it was 'a mere pretext for a narcotics search' and that a lawful post-arrest search of the person would not be rendered invalid by the fact that it was not motivated by the officers' safety concern that justifies such searches."[10] In *Prouse,* the Supreme Court distinguished random traffic stops from "probable cause to believe that a driver is violating any one of the multitude of applicable traffic and equipment regulations."[11] The *Prouse* de-

---

**6.** *See Delaware v. Prouse,* 440 U.S. 648, 653, 99 S.Ct. 1391, 59 L.Ed.2d 660 (1979).

**7.** *Whren v. United States,* 517 U.S. 806, 810, 116 S.Ct. 1769, 135 L.Ed.2d 89 (1996).

**8.** *Id.*

**9.** *Whren v. United States,* 517 U.S. at 813, 116 S.Ct. 1769.

**10.** *Id.* at 813, 116 S.Ct. 1769 (*quoting United States v. Robinson,* 414 U.S. 218, 94 S.Ct. 467, 38 L.Ed.2d 427 (1973)).

**11.** *Delaware v. Prouse,* 440 U.S. at 661, 99 S.Ct. 1391.

cision noted that where police officers are required to act upon actual traffic violations that they observe, it will provide " 'the quantum of individualized suspicion' that is necessary to ensure the police discretion is sufficiently constrained."[12]

### Traffic Violation as Probable Cause

■ The legal issue presented in this appeal is whether there was probable cause to stop the motor vehicle in which McDonald was a passenger. The focus of our analysis is upon the sworn affidavit of probable cause, executed by Corporal Hake, that was the basis for issuing the warrant to arrest McDonald. The "four corners" test is used to determine whether an affidavit demonstrates probable cause to issue either an arrest warrant or a search warrant.[13] Under that test, sufficient facts must appear on the face of the affidavit such that a reviewing court can ascertain from that document alone the factual basis for a determination that probable cause exists.[14]

■ After the automobile was stopped, Corporal Hake arrested McDonald without a warrant and transported him to the police station. Nevertheless, the sworn affidavit that Corporal Hake subsequently executed in support of the nine-count arrest warrant has determinative probative value because it is the only contemporaneous evidence of why he stopped the motor vehicle several hours earlier that day. The only reason cited in the affidavit for stopping the vehicle was the alleged turn signal traffic violation. Corporal Hake's testimony at the suppression hearing confirmed that fact:

Defense Counsel: Officer, you would agree with me in the Affidavit of Probable Cause, the only basis that you identified for stopping the vehicle that Mr. McDonald was riding in was the fact that it failed to signal its intent to proceed in a right-hand direction *from the parking lot.* (emphasis added).

Corporal Hake: That's correct.

Based upon the affidavit and Corporal Hake's testimony, McDonald's defense counsel argued that the only issue the Superior Court needed to decide was whether there was a turn signal violation that satisfied the probable cause requirement. We agree. Nevertheless, in denying McDonald's motion to suppress, the Superior Court relied upon additional factors such as the high crime area in which the Shore Stop was located, the defendants' "unprovoked" flight and the registration issue. Those factors, however, were based upon Corporal Hake's additional testimony at the suppression hearing. They were not included in the affidavit of probable cause to arrest as reasons for stopping the vehicle. The Superior Court's reliance upon those extra affidavit considerations ran counter to the purpose of the "four corners" test, which is to ensure that the reviewing court determines "whether the constitutional requirements [of probable cause] have been met without reliance upon faded and often confused memories."[15]

■ The only basis identified by Corporal Hake for stopping the motor vehicle within the Affidavit of Probable Cause to Arrest, was the alleged turn signal viola-

12. *Whren v. United States,* 517 U.S. at 817–18, 116 S.Ct. 1769 (*quoting Delaware v. Prouse,* 440 U.S. at 654–55, 99 S.Ct. 1391).

13. *Pierson v. State,* 338 A.2d 571, 573 (Del. 1975). *See also United States v. Castillo,* 866 F.2d 1071, 1076 (9th Cir.1988) (applying four corners test to arrest warrants as well as search warrants).

14. *Pierson v. State,* 338 A.2d at 573.

15. *Pierson v. State,* 338 A.2d 571, 574 (*quoting United States v. Acosta,* 501 F.2d 1330 (1974)).

tion. The affidavit did not contain any reference to the vehicle registration or to the fact that the Shore Stop was located in an area allegedly known for drug and other criminal activity. Accordingly, we look solely to the validity of the traffic violation to determine whether there was sufficient probable cause to stop the motor vehicle.

As recited in his affidavit, the alleged traffic violation that Corporal Hake observed was the driver's failure to use his turn signal when exiting the private parking lot of Canterbury Shore Stop onto Irish Hill Road. In his testimony, Corporal Hake cited Title 21, section 4155(a) and (b) as the basis for the violation. That statute states in relevant part:[16]

### § 4155. Turning movements and required signals

(a) No person shall turn a vehicle at an intersection unless the vehicle is in proper position upon the roadway as required in § 4152 of this title, or turn a vehicle to enter a private road or driveway, or otherwise turn a vehicle from a direct course or move right or left upon a roadway or turn so as to proceed in an opposite direction unless and until such movement can be made with safety without interfering with other traffic. No person shall so turn any vehicle without giving an appropriate signal in the manner hereinafter provided.

(b) A signal of intention to turn or move right or left when required shall be given continuously during not less than the last 300 feet or more than one-half mile traveled by the vehicle before turning.

The Affidavit of Probable Cause asserts the vehicle entered the public highway

without signaling. But that did not constitute a traffic violation, for two reasons. First, the provisions of Chapter 41 only apply to public highways except as otherwise provided.[17] Nothing in section 4155(a) provides for its application to motor vehicles that *exit from private parking* lots on to a public highway. Second, the record indicates that the Canterbury Shore Stop parking lot was only about 200 feet in total. Apart from the fact that section 4155(b) does not apply to private property, by Corporal Hake's own admission it would have been impossible for anyone to comply with its terms. Thus, the record reflects no factual basis to establish probable cause to stop the motor vehicle for a traffic violation of either section 4155(a) or (b).[18]

### Evidence Obtained Inadmissible

It is indisputable that but for his improper traffic stop of the vehicle, Corporal Hake would not have had any contact with its occupants and thus, would not have had an opportunity to see the drugs on the driver's seat and in the center console. Corporal Hake's view of those drugs provided the probable cause to impound the vehicle and arrest its driver and McDonald. The search conducted incident to McDonald's arrest uncovered the additional drugs McDonald had on his person.

■ Without probable cause to stop the vehicle for a traffic violation, the stop was unreasonable and in violation of McDonald's Fourth Amendment rights.[19] It has long been established that any evidence recovered or derived in violation of the Fourth Amendment may not be introduced at trial for the purpose of proving the defendant's guilt.[20] All of the police

---

**16.** Del.Code Ann. tit. 21, § 4155(a) and (b).

**17.** Del.Code. Ann. tit. 21, § 4101(a).

**18.** Although the Superior Court did not rule directly that there was no traffic violation, it characterized the alleged turn signal violation

as "very questionable suspicion," i.e. not probable cause.

**19.** *Whren v. United States,* 517 U.S. 806, 116 S.Ct. 1769, 135 L.Ed.2d 89 (1996).

**20.** *Mapp v. Ohio,* 367 U.S. 643, 654–655, 81 S.Ct. 1684, 6 L.Ed.2d 1081 (1961) and *Cald-*

action taken after the traffic stop was a direct result of the improper traffic stop that violated McDonald's Fourth Amendment rights. The Superior Court erred as a matter of law by denying McDonald's motion to suppress.

### Comments on Dissent

The dissent notes that the Superior Court identified four possible factors to support the motor vehicle stop. The dissent agrees with the majority's conclusion that three of those factors do not support a stop. The dissent concludes, nevertheless, that the motor vehicle stop was justified by the "state trooper's mistaken belief that the vehicle was not properly registered." The record, however, reflects that Officer Hake never testified that he stopped the vehicle on the basis of that admittedly mistaken belief about the car's registration.

Officer Hake's contemporaneous affidavit states that he stopped the motor vehicle for the alleged turn signal violation. The dissent suggests the only reason for the stop that was given by Officer Hake in the affidavit was incomplete. The dissent disregards the fact that the alleged turn signal violation was also the only basis for the motor vehicle stop that Officer Hake gave at the suppression hearing. Officer Hake testified he "pulled out, activated my emergency equipment, and stopped the vehicle" after "there was no turn signal on when the car made a right turn onto Irish Hill Road."

The doctrine of deference on appeal to a finding of historical fact (invalid registration) has no application when that additional factual finding is not supported by and is inconsistent with the sole fact (turn signal violation) identified by Officer Hake in his candid testimony at the suppression

hearing and contemporaneous affidavit. Irrespective of what else was known to Officer Hake, the record reflects that Officer Hake only stopped the motor vehicle for one reason: an alleged turn signal violation. The dissent acknowledges that if the non-existent turn signal violation was the basis for the motor vehicle stop, then McDonald's Fourth Amendment rights were violated.

### Conclusion

The judgments of the Superior Court are reversed. This matter is remanded for further proceedings in accordance with this opinion.

BERGER, Justice, Dissenting:

I join in Vice Chancellor Noble's dissent. I am writing separately to clarify the record and respond to the majority's "Comments on Dissent."

The majority says that, at the suppression hearing, Officer Hake gave only one basis for the stop—the turn signal violation. The majority supports that statement by weaving together two distinct portions of Officer Hake's testimony and adding its own conclusion:

> Officer Hake testified that he "pulled out, activated my emergency equipment, and stopped the vehicle" after "there was no turn signal on when the car made a right turn onto Irish Hill Road."[21]

In fact, Officer Hake never directly stated that the turn signal or the apparently fictitious tag motivated his stop. With respect to the turn signal, he testified:

> A. .... They continued north. The vehicle approached the intersection of Irish Hill Road. There was no turn

---

*well v. State,* 780 A.2d 1037, 1051 (Del.2001) (*quoting Wong Sun v. United States,* 371 U.S. 471, 484, 83 S.Ct. 407, 9 L.Ed.2d 441 (1963)).

**21.** Majority Opinion at 1080.

signal indicator on. Made a right turn onto Irish Hill Road, you can travel eastbound.

It was at that point in time that I pulled out, activated my emergency equipment, and stopped the vehicle.[22]

There was no testimony that the turn signal was the reason for the stop. But if it is reasonable to conclude from this sequence of events that the turn signal was one reason for the stop, it is even more reasonable to conclude that the fictitious tag was another reason. Officer Hake testified at some length about reading the license plate while the car was still stopped in the parking lot, punching in the numbers, and getting a report that the license plate was invalid. He repeated the process as he followed the vehicle out of the parking lot. Then, he explained that he discovered his error at the station:

Q. When you were writing your report, did you recognize any error?

A. Yes, I did.

Q. What was that?

A. What I had done is I went ahead and ran the VIN at Troop 3 to the vehicle to check to see if the vehicle was stolen or not. When I ran the VIN at Troop 3, the inquiry came back that the vehicle was registered.

Q. It was at that point in time that I went ahead and checked—*I had actually removed the tag from the vehicle as evidence that it was a fictitious tag.* I went ahead and compared the tag to what was coming back when I ran the VIN. It was at that point in time that I realized that I must have transposed one of the numbers in the tag.[23]

Why would an officer remove the tag from the vehicle if he had not been preparing to press charges based on the belief that the tag was invalid? The trial court acted well within its discretion in concluding that the officer's reasonable belief about the invalid tag was one motivation, and adequate justification, for the stop.

In sum, the record supports both the majority's factual conclusion and the trial court's factual conclusion. As a result, the trial court's decision should be affirmed.

NOBLE, Vice Chancellor, Dissenting:

Defendant-appellant Kevin McDonald was convicted of drug offenses based on evidence seized following a warrantless stop of the automobile in which he was a passenger. Drugs were found in the vehicle; he was arrested; a subsequent search revealed more drugs secreted on his person. A few hours later, the arresting state trooper executed an Affidavit of Probable Cause for his arrest. McDonald contends that the state trooper lacked probable cause for the warrantless stop. Apart from his challenge to the vehicle stop, McDonald raises no challenge to his conviction.

The majority, in condemning the vehicle stop, focuses on the Affidavit of Probable Cause supporting the arrest warrant. From that separate and distinct magisterial process, it draws factual findings that diverge from those of the trial judge who heard the suppression hearing testimony and, exercising his discretion, found the facts associated with the stop and concluded that the state trooper had sufficient cause for his actions.

At the suppression hearing, the State sought to justify the warrantless vehicle stop on several grounds; some of them, accepted by the trial judge, do not, as properly pointed out by the majority, with-

---

22. Appellee's Appendix, B–5.

23. Appellee's Appendix, B–5.

stand appellate review. The state trooper, however, had probable cause to believe that the vehicle was not properly registered. He had twice entered the tag number and each time the database response indicated that it was an invalid number. Thus, when the vehicle was traveling on the public road at the time of the stop, he had a reasonable and good faith belief that a motor vehicle violation was occurring. Unfortunately, the state trooper had entered the tag numbers incorrectly and the vehicle was, in fact, properly registered. Even though the state trooper was wrong about the factual basis for this reason to stop the vehicle, a police officer's good faith mistake of fact is not a reason under the Fourth Amendment of the United States Constitution to suppress the evidence resulting from that stop. Therefore, I respectfully dissent.

## I.

Although it is said that this Court reviews a trial court's denial of a motion to suppress under an abuse of discretion standard,[24] more accurately, the trial court's findings of historical fact are re-

viewed under the "deferential 'clearly erroneous' " standard,[25] but its conclusion as to probable cause, or more specifically its application of the law of search and seizure to those historical facts, is considered *de novo*.[26]

## II.

The Court is called upon to review the Superior Court's determination that the state trooper had probable cause to stop the vehicle.[27] The Superior Court recognized four possible factors supporting probable cause for the warrantless stop: (1) the right turn from the parking lot without use of a blinker light; (2) the vehicle was parked at a convenience store, a known forum for drug transactions, and a pedestrian was seen close to the vehicle; (3) the driver of the vehicle hastily exited the parking lot shortly after the state trooper's arrival; and (4) the state trooper's mistaken belief that the vehicle was not properly registered. As the majority concludes, the first three items in this listing do not support probable cause for the warrantless stop.

---

**24.** *E.g., Guy v. State,* 913 A.2d 558, 563 (Del. 2006); *Donald v. State,* 903 A.2d 315, 318 (Del.2006).

**25.** *Lopez v. State,* 861 A.2d 1245, 1248 (Del. 2004); *see also State v. Henderson,* 892 A.2d 1061, 1066 (Del.2006).

**26.** *Donald,* 903 A.2d at 318. *See also Ornelas v. United States,* 517 U.S. 690, 696–97, 116 S.Ct. 1657, 134 L.Ed.2d 911 (1996), explaining the nature of appellate review of a trial court's probable cause determination:

The principal components of a determination of reasonable suspicion or probable cause will be the events which occurred leading up to the stop or search, and then the decision whether these historical facts, viewed from the standpoint of an objectively reasonable police officer, amount to reasonable suspicion or to probable cause. The first part of the analysis involves only a

determination of historical facts, but the second is a mixed question of law and fact: "[T]he historical facts are admitted or established, the rule of law is undisputed, and the issue is whether the facts satisfy the [relevant] statutory [or constitutional] standard, or to put it another way, whether the rule of law as applied to the established facts is or is not violated."

(alterations in original).

**27.** Probable cause for a warrantless vehicle stop equates with "a reasonable ground for belief of guilt." *Maryland v. Pringle,* 540 U.S. 366, 371, 124 S.Ct. 795, 157 L.Ed.2d 769 (2003) (quotation omitted). This Court has recognized that, in this context, probable cause is "determined by the totality of the circumstances and requires a showing of a probability that [illegal] activity is occurring or has occurred." *Bease v. State,* 884 A.2d 495, 498 (Del.2005).

First, as the majority properly determines, the right turn from the parking lot without the use of a blinker was not a violation of Delaware law and thus could not justify a warrantless stop. A police officer's good faith mistake of law, even one that is reasonable, does not survive scrutiny under the United States Constitution as the basis for a warrantless stop.[28]

Second, the Superior Court's reference to the driver's "unprovoked flight" is not supported by the record, even with recognition that the Superior Court's findings of fact are entitled to deference.

Third, the presence of McDonald at a location known for drug trafficking, by itself, does not support the vehicle stop. Perhaps it might serve as an additional factor to consider under different circumstances, but it does not inform any judgment with respect to suspicion of a motor vehicle offense, the remaining criminal conduct identified by the state trooper.[29]

Consequently, the only remaining basis to support the warrantless stop is the state trooper's understanding that the vehicle was not properly registered. Of course in this instance, the police officer entered the registration numbers incorrectly and thereby obtained incorrect information, when, indeed, the vehicle's registration complied with the law. As a general matter, under the Fourth Amendment of the United States Constitution, a police officer's good faith mistake of fact will not taint an arrest that would have been lawful if the basis for his suspicion of criminal conduct had in fact been accurate.[30] Furthermore, motor vehicle violations may

---

**28.** *See United States v. Tyler,* 512 F.3d 405, 411 (7th Cir.2008) ("[A] mistake of law (as opposed to a mistake of fact) cannot justify an investigative detention."); *United States v. Booker,* 496 F.3d 717, 722 (D.C.Cir.2007) ("Unlike stops premised on mistakes of fact, stops premised on a mistake of law, even a reasonable, good-faith mistake, are generally held to be unconstitutional." (quotation and alteration omitted)); *United States v. Coplin,* 463 F.3d 96, 101 (1st Cir.2006) ("Stops premised on a mistake of law, even a reasonable, good-faith mistake, are generally held to be unconstitutional."); *United States v. Chanthasouxat,* 342 F.3d 1271, 1279 (11th Cir.2003) ("[T]he correct question is whether a mistake of law, no matter how reasonable or understandable, can provide the objectively reasonable grounds for reasonable suspicion or probable cause. And to that question we join the Fifth and Ninth Circuits in holding that a mistake of law cannot provide reasonable suspicion or probable cause to justify a traffic stop."); *United States v. Lopez–Soto,* 205 F.3d 1101, 1106 (9th Cir.2000) ("[T]here is no good-faith exception to the exclusionary rule for police who do not act in accordance with governing law."); *United States v. Lopez–Valdez,* 178 F.3d 282, 289 (5th Cir.1999) ("But if officers are allowed to stop vehicles based upon their subjective belief that traffic laws have been violated even where no such viola-

tion has, in fact, occurred, the potential for abuse of traffic infractions as pretext for effecting stops seems boundless and the costs to privacy rights excessive."). *But see United States v. Bueno,* 443 F.3d 1017, 1024 (8th Cir.2006) ("We have held, however, that neither mistake of law nor mistake of fact renders a traffic stop illegal so long as the officer's actions were objectively reasonable in the circumstances."); *United States v. Planells–Guerra,* 509 F.Supp.2d 1000, 1002 (D.Utah 2007) ("The good-faith exception applies to both warrantless searches and to objectively reasonable police officer mistakes of law.").

**29.** Presence in an area known for criminal activity is not enough, standing alone, to support reasonable suspicion. *Brown v. Texas,* 443 U.S. 47, 51–52, 99 S.Ct. 2637, 61 L.Ed.2d 357 (1979); *Jones v. State,* 745 A.2d 856, 871 (Del.1999). As *Jones* explains, presence in a high crime area may be used "as additional support to bolster a finding of reasonable suspicion, not as the sole bas[i]s of that finding." *Id.*

**30.** *See United States v. Moody,* 240 F. App'x 858, 859 (11th Cir.2007); *United States v. Dowthard,* 500 F.3d 567, 569 (7th Cir.2007); *supra* note 5.

serve as the basis for warrantless searches and seizures.[31]

In short, the Superior Court found that the state trooper stopped the vehicle for several reasons, including a belief that the vehicle, which was being driven on a public road, was not properly registered.[32] That finding of historical fact—that the police officer reasonably believed that there was a vehicle registration violation—should, in my view, end our inquiry under the Fourth Amendment of the United States Constitution.

The majority, however, concludes that the Superior Court erred in considering the potential registration violation as a basis for the warrantless stop and, instead, holds that the only possible ground available to the Superior Court for sustaining the stop was the right turn from the parking lot. To reach that conclusion, the majority looks to the Affidavit of Probable Cause prepared by the state trooper to secure a warrant for McDonald's arrest a few hours after the vehicle stop. The purpose of that affidavit, of course, was not to justify or support the earlier warrantless stop. Nonetheless, the majority invokes the "four corners" test, under which a court reviewing the sufficiency of cause to support the issuance of a warrant is limited to the facts set forth in the affidavit presented to the issuing judicial officer. Because the affidavit did not mention the perceived registration violation, the majority concludes that the Superior Court

should not have given any weight to that ground for the stop.

I respectfully suggest that the majority's reliance upon the "four corners" test is misplaced for two reasons. First, the "four corners" test is appropriate for evaluating whether probable cause existed for the issuance of a warrant, a warrant issued in reliance upon an affidavit. The test is, by definition, focused on the purpose of the warrant—in this instance, McDonald's arrest. By limiting its review of the historical facts to the supporting affidavit, an appellate court is able to mimic precisely the work of the issuing magistrate by confining its factual considerations to those set forth in the affidavit that was before the magistrate.[33] In other words, by limiting any review to the four corners of the affidavit, it is possible for the appellate court to have exactly the same factual understanding as the magistrate; in addition, the "four corners" test avoids the risks necessarily caused by the passage of time and faded memories.

On the other hand, a police officer making an unanticipated and warrantless arrest does not first prepare a text supporting his actions.[34] There is no precisely memorialized set of facts upon which he acted. For that reason, the validity of a warrantless search or seizure is measured contextually or in light of all the circumstances.[35] The root invasion of Fourth Amendment rights challenged by McDonald occurred as the result of the warrantless vehicle stop, not his arrest

---

**31.** *See, e.g., Whren v. United States,* 517 U.S. 806, 813–14, 116 S.Ct. 1769, 135 L.Ed.2d 89 (1996).

**32.** *See* 21 *Del. C.* § 2101.

**33.** *See, e.g., Dorsey v. State,* 761 A.2d 807, 811 (Del.2000); *Pierson v. State,* 338 A.2d 571, 573–74 (Del.1975).

**34.** In assessing the propriety of a warrantless arrest or search, as the Court is required to

do here, the question is materially different. The reviewing court's task is to examine the circumstances surrounding the search or seizure from "the standpoint of an objectively reasonable police officer." *Pringle,* 540 U.S. at 371, 124 S.Ct. 795.

**35.** *See, e.g., Coleman v. State,* 562 A.2d 1171, 1177 (Del.1989).

pursuant to a warrant. Because the "four corners" test is not properly applied to a warrantless vehicle stop, it does not limit the universe of facts that the Superior Court was entitled to consider (or that the State had the right to proffer) in support of the vehicle stop.

Second, the majority's approach intrudes unnecessarily into the discretionary province of the trial judge: historical fact finding. Perhaps the majority's analysis reflects skepticism about the veracity of the state trooper's testimony.[36] The majority correctly observes that the Affidavit of Probable Cause did not refer to any possible registration violation,[37] but the state trooper was under no duty to set forth all of his reasons for the warrantless stop; the facts that supported McDonald's eventual arrest were, of course, tied to the vehicle stop, but the state trooper had no reason to give a complete explanation or justification for the vehicle stop in the affidavit used to obtain a warrant for McDonald's later arrest.[38] Nevertheless, the majority dismisses the state trooper's testimony because of the affidavit's contents.[39]

36. "[S]tatements, ... having been made when memory was more recent and when less time for the play of influence has elapsed, are often inherently more trustworthy than the testimony itself." McCORMICK'S HANDBOOK OF THE LAW OF EVIDENCE § 34 (Edward W. Cleary, ed., 2d ed. 1972). *See also Kelly v. City of San Jose*, 114 F.R.D. 653, 667 (N.D.Cal.1987) (stating that the quality of information developed close in time to events in question is likely to be high). The majority may be seen as drawing upon sound fact finding methodology and that is consistent with my reservation that it is engaging in the finding of historical fact. The majority states that Affidavit of Probable Cause in support of arrest has "determinate probative value because it is the only contemporaneous evidence of why [the state trooper] stopped the motor vehicle...." Usually, near-contemporaneous accounts of events are afforded more weight than later accounts, but the mere existence of contemporaneous evidence should not foreclose consideration of later evidence. Contemporaneity is instead a factor for a trial judge to consider when determining what weight to give certain evidence. *Cf., e.g., McAllister v. Kallop*, 1995 WL 462210, *17 (Del.Ch. July 28, 1995) ("Because I do not find it credible, I give no weight to Kallop's testimony that he believed further steps were necessary to complete the transfer of his share. I find the language of the Letter Agreement, the best contemporaneous evidence of Kallop's intent, to be much more persuasive."). Evidence is not rendered "determinative" or "dispositive" because it is the only contemporaneous evidence in a given case-other evidence, found credible by the trial judge, exists in this case: the state trooper's testimony below.

37. The majority points to testimony given by the state trooper at the suppression hearing to support its factual conclusion that the potential registration violation was not a basis for the stop:

> Defense Counsel: Officer, you would agree with me in the Affidavit of Probable Cause, the only basis that you identify for stopping the vehicle that Mr. McDonald was riding in was the fact that it failed to signal its intent to proceed in a right-hand direction from the parking lot?
> Corporal Hake: That's correct.

Instead of demonstrating that the only reason that the state trooper had for stopping the vehicle was the right-hand turn out of the parking lot, the truthful testimony of the state trooper at the suppression hearing was that the only reason *set forth in the affidavit* was the right-hand turn. The state trooper's unremarkable confirmation of the words contained in the Affidavit of Probable Cause for McDonald's arrest does not constitute testimony by the state trooper (or otherwise support the inference) that the right turn was the only basis for the stop.

38. To the extent that the affidavit and the state trooper's testimony do not perfectly coincide, that, at most, goes to the weight to be attributed to his testimony, not its admissibility. *See, e.g., Demby v. State*, 945 A.2d 593, 2008 WL 534273, at *2 (Del. Feb.28, 2008) (TABLE).

39. McDonald did not argue to the Superior Court that he was the victim of a pretextual traffic stop, *see State v. Heath*, 929 A.2d 390 (Del.Super.2006) (applying the Delaware Constitution), and, therefore, no such claim

Thus, without having had the opportunity to observe and assess the state trooper's credibility, the majority declines to credit his testimony and the conclusions drawn by the Superior Court after hearing that testimony. The state trooper testified, and the Superior Court accepted as historical fact, that one of the reasons why he suspected criminal activity was the result of his inquiry into the status of the vehicle's registration. Given the deference to which a trial judge is entitled on review of his historical factual findings, those are facts which this Court should accept.[40] That limited set of facts demonstrates that the state trooper had an objectively reasonable belief that the vehicle was being operated without a valid registration and suffices to support the warrantless stop of the vehicle under the United States Constitution.[41]

## III.

In sum, because the vehicle stop was reasonable under the Fourth Amendment, there is no reason to suppress the evidence obtained from any subsequent search. Accordingly, I would affirm the judgment below.

may be asserted now. *See Demby*, 2008 WL 534273, at *3.

**40.** The majority accurately points out that the state trooper did not expressly state at the suppression hearing that the perceived registration violation was among his reasons for stopping the vehicle. It is clear, however, that the prosecutor, the defense attorney, and the trial judge understood that to have been one of the reasons invoked by the State to justify the stop. For example, McDonald's suppression motion challenged its use; both prosecutor and defense counsel addressed it at some length during the suppression hearing; and the trial judge relied upon it in his decision. McDonald's counsel urged the trial judge not to accept the perceived registration violation as a basis for the stop; he did not contend that the prosecution had failed to meet its burden to put the registration violation before the trial judge. Moreover, the state trooper testified at the suppression hearing that he had removed the tag from the vehicle to preserve it as evidence of what he believed at the time was the use of a fictitious tag. Although it is not apparent precisely when the tag was removed, it was done before the state trooper learned that the registration was valid. That is evidence, either contempo-

raneous or substantially contemporaneous with the stop, that supports the reasonable inference, as drawn by the trial judge, that the registration violation was one of the several factors animating the state trooper's conduct of stopping the vehicle. Thus, it is clear—as it was to all involved in the suppression hearing—that the perceived registration violation was one of the grounds upon which the state trooper claimed to have relied in making the warrantless stop.

**41.** McDonald had also invoked the Delaware Constitution in his effort to suppress the evidence used to convict him. He relies upon *Dorsey* which held that, for purposes of Article I, Section 6 of the Delaware Constitution, actual probable cause, not merely a good faith belief in probable cause, is necessary for the issuance of a search warrant. 761 A.2d at 820. *Dorsey*, however, has not been applied in the context of a warrantless vehicle stop, and because McDonald's conviction will be reversed under the Fourth Amendment as applied by the majority, there is no reason to address now whether *Dorsey's* reach should be extended.