# IN THE SUPERIOR COURT OF THE STATE OF DELAWARE

STATE OF DELAWARE        )
                             )
v.                       )      I.D. No. 1608006943
                             )
ISAIAH MOORE,            )
                             )
Defendant.              )

## OPINION

Date Submitted: March 10, 2017
Date Decided: March 16, 2017

*Upon Defendant's Motion to Suppress*: **DENIED.**

Phillip M. Casale, Deputy Attorney General, Delaware Department of Justice, 820 North French Street, Wilmington, Delaware, Attorney for the State.

Kevin J. O'Connell, Esquire, 820 North French Street, Wilmington, Delaware, Attorney for Defendant.

**JURDEN, P.J.**

# I. INTRODUCTION

Defendant Isaiah Moore was driving a motor vehicle in Wilmington when the police stopped his vehicle for a suspected window tint violation. Defendant moves to suppress a firearm the police discovered after a search of the vehicle, as well as all statements made by Defendant as a result of the search.[1] For the reasons set forth below, Defendant's Motion to Suppress is **DENIED**.

# II. FACTS

On August 10, 2016, at around 1:30 a.m., Wilmington Police Officers Wiggins and Moses were patrolling in the northern section of Wilmington when they observed a vehicle with heavily tinted windows pass them as it was heading in the opposite direction. The police were unable to see inside the vehicle or determine how many occupants were in the vehicle due to the dark tint. Before stopping the vehicle for a suspected window tint violation, the police checked DELJIS to see if the vehicle had a medical tint waiver. It did not. The police made a U-turn and conducted a traffic stop.

At the time of the stop, Officer Wiggins believed that *any* window tint without a medical waiver constituted a violation of 21 *Del. C.* § 4313. At the suppression hearing, Officer Wiggins conceded that his understanding of 21 *Del. C.* § 4313 at the time of the stop was inaccurate, but testified that he would

---

[1] D.I. 11.

2

have stopped the vehicle had he known the correct standard ("the 70 percent light rule")[2] because he "couldn't see through the window at all. It was heavily tinted."

The police discovered two occupants in the vehicle: the driver, Defendant Isaiah Moore, and the passenger, Kevin White. Mr. White had an outstanding capias for his arrest, and the police immediately took him into custody. After determining that Defendant did not have a valid license and was unable to produce a registration card for the vehicle, the police removed him from the vehicle. Officer Wiggins testified he asked Defendant for consent to search the vehicle, and Defendant consented. Defendant denies Officer Wiggins requested consent to search and denies he consented. During the search, the police discovered a 9 mm firearm under the third row seat. The police transported Defendant, Mr. White, and the vehicle back to the Wilmington Police Department.

As a result of the traffic stop and subsequent search of the vehicle, Defendant was charged with Possession, Purchase, Ownership, or Control of a Firearm by a Person Prohibited (2 counts), Carrying a Concealed Deadly Weapon, Receiving a Stolen Firearm, Driving Without a License, Driving Without a Valid Registration Plate, and Aftermarket Window Tint Without Certificate.

---

[2] *See infra* pp. 6–7.

## III. PARTIES' CONTENTIONS

Defendant argues that because Officer Wiggins mistakenly thought that any window tint, without a medical waiver, violated 21 *Del. C.* § 4313, he did not have a reasonable basis to conclude that Defendant violated the traffic code. Defendant further argues that because the stop took place at night, the officers could not see inside the vehicle regardless of the degree of window tint, and therefore, they could not reasonably suspect a tint violation based on their inability to see inside. Defendant asserts that the firearm, as well as all statements made by Defendant, must be suppressed because the illegality of the stop taints any consent to search the vehicle.[3] Finally, Defendant maintains that he did not consent to the search.[4]

The State argues that although Officer Wiggins' "subjective impression of 21 *Del. C.* § 4313" was inaccurate at the time of the stop, there were "objective facts available and known to" Officer Wiggins that established a reasonable suspicion that Defendant's vehicle violated 21 *Del. C.* § 4313.[5] With regard to consent to search, the State relies on Officer Wiggins' testimony that Defendant gave his consent.

---

[3] *See Lopez-Vazquez v. State*, 956 A.2d 1280, 1291 (Del. 2008) ("If consent is given after an illegal seizure, that prior illegality taints the consent to search." (quoting *United States v. Richardson*, 949 F.2d 851, 858 (6th Cir. 1991))).

[4] Defendant argued at the suppression hearing that he did not consent to the search. Defendant did not argue lack of consent in his Motion to Suppress. D.I. 11 ¶ 5. The State objected to the lack of notice of this argument, but, after discussion with defense counsel and the Court, decided not to request a continuance. The Court allowed Defendant to argue lack of consent at the hearing, and Defendant testified he never consented to a search of the vehicle.

[5] D.I. 15 ¶ 17.

## IV. STANDARD OF REVIEW

A police officer may detain an individual if he or she has reasonable articulable suspicion of criminal activity.[6] Reasonable articulable suspicion exists when a police officer can "point to specific and articulable facts which, taken together with rational inferences from those facts, reasonably warrant the intrusion."[7] Reasonable articulable suspicion "must be evaluated in the context of the totality of the circumstances as viewed through the eyes of a reasonable, trained police officer in the same or similar circumstances, combining objective facts with such an officer's subjective interpretation of those facts."[8] Reasonable articulable suspicion "is a less demanding standard than probable cause and requires a showing considerably less than preponderance of the evidence . . . ."[9] Pursuant to 21 *Del. C.* § 2144(a), a police officer may "upon reasonable cause," stop a vehicle to investigate a possible equipment defect.

---

[6] *Terry v. Ohio*, 392 U.S. 1, 21–22 (1968). The holding in *Terry* is codified in Delaware law at 11 *Del. C.* § 1902(a). Pursuant to § 1902(a) a police officer "may stop any person abroad, or in a public place, who the officer has reasonable ground to suspect is committing, has committed or is about to commit a crime, and may demand the person's name, address, business abroad and destination."

[7] *Jones v. State*, 745 A.2d 856, 861 (Del. 1999) (quoting *Coleman v. State*, 562 A.2d 1171, 1174 (Del. 1989)).

[8] *Id.*

[9] *Woody v. State*, 765 A.2d 1257, 1263 (Del. 2001) (quoting *Illinois v. Wardlow*, 528 U.S. 119, 123 (2000)).

# V. DISCUSSION

## A. Vehicle Window Tint

The window tint law in Delaware is not straightforward and requires some hopscotch. Chapter 21, Section 4313(a) of the Delaware Code provides:

> No person shall operate any motor vehicle on any public highway, road or street with the front windshield, the side windows to the immediate right and left of the driver and/or side wings forward of and to the left and right of the driver that do not meet the requirements of Federal Motor Vehicle Safety Standard 205 in effect at the time of its manufacture.

Federal Motor Vehicle Safety Standard 205 is set forth in 49 C.F.R. § 571.205. As stated in § 571.205, the purpose of Federal Motor Vehicle Safety Standard 205 is "to reduce injuries resulting from impact to glazing surfaces, to ensure a necessary degree of transparency in motor vehicle windows for driver visibility, and to minimize the possibility of occupants being thrown through the vehicle windows in collisions." Section 571.205 requires glazing materials for use in motor vehicles to "conform to ANSI/SAE Z26.1–1996 . . . unless this standard provides otherwise."[10] As noted by the Court in *State v. Wilson*, "[t]he federal regulation on

---

[10] 49 C.F.R. § 571.205 S5.1. Section 571.205 incorporates ANSI/SAE Z26.1–1996 by reference in 49 C.F.R. § 571.5. Section 571.5 defines ANSI/SAE Z26.1–1996 as the "American National Standard for Safety Glazing Materials for Glazing Motor Vehicles and Motor Vehicle Equipment Operating on Land Highways–Safety Standard" published by the American National Standards Institute.

which the state regulation is based is virtually incomprehensible," and "it is almost impossible to identify the point at which after-market tinting becomes excessive."[11]

Recognizing the unwieldiness of § 4313's incorporation of Federal Motor Vehicle Safety Standard 205, the Delaware Department of Transportation ("DelDOT") promulgated 2 *Del. Admin. C.* § 2277.[12] Section 2277 explains that the regulation is necessary to provide DelDOT "a more definitive method in which to determine which products or materials are acceptable at the time of the vehicle safety inspection" and "to assist police officers in enforcing the law."[13] Section 2277 assists police officers in enforcing the law by clarifying that window tint "must provide [] light transmission of not less than 70 percent" ("the 70 percent light rule").[14] Section 4313 provides an exception for those in possession of "a statement signed by a licensed practitioner of medicine and surgery or osteopathic medicine or optometry verifying that tinted windows are medically necessary for the owner or usual operator."[15]

## B. Reasonable Articulable Suspicion

Defendant contends that because Officer Wiggins was mistaken about the degree of tint prohibited by Delaware law, his suspicion was not (and could not) be objectively reasonable. In support of this argument, Defendant relies on *State v.*

---

[11] 2013 WL 2423093, at *2 (Del. Super. Mar. 12, 2013).
[12] DelDOT adopted § 2277 pursuant to its authority under 21 *Del. C.* § 302.
[13] 2 *Del. Admin. C.* § 2277-2.0.
[14] *Id.* § 2277-3.1.2.
[15] 21 *Del. C.* § 4313(d).

*Coursey*.[16] In *Coursey*, a police officer observed a vehicle traveling parallel to his patrol car with dark tinted windows.[17] The vehicle made an abrupt turn into a parking lot, whereupon the officer followed the vehicle into the parking lot and activated his lights.[18] Coursey submitted to the stop by parking in a handicapped parking spot.[19] As a result of the stop, Coursey was charged with multiple offenses, including a window tint violation.[20] Coursey moved to suppress evidence seized as a result of the traffic stop, and at the suppression hearing, the officer testified the basis for the stop was his observation that the tinted windows concealed all the occupants in the vehicle.[21] When the Court asked the State to identify the standards that apply to the enforcement of § 4313(a), the Court found the State's response incomplete and inaccurate, noting it raised "a question of candor."[22] The Court was similarly unimpressed by the State's assertion that parking in a handicapped parking space constituted an additional basis for the stop because Coursey pulled into the handicapped parking spot in order to submit to a police vehicle with activated lights.[23] The Court specifically found as fact that Coursey pulled into the handicapped parking spot only *after* the officer activated

---

[16] 906 A.2d 845 (Del. Super. 2006).
[17] *Id.* at 846.
[18] *Id.*
[19] *Id.*
[20] *Id.*
[21] *Id.*
[22] *Id.* at 847 n.3.
[23] *Id.* at 847.

his lights, "thereby eliminating the parking location as a basis for the stop."[24] Further, the officer who stopped Coursey did not fare well under a withering cross examination by defense counsel, thus eroding his credibility with the Court.[25] The Court suppressed the evidence, concluding, "[f]ailure to understand the law by a person charged with enforcing it is not objectively reasonable. . . . I find that the officer did not have reasonable articulable suspicion based on fact and law."[26]

Delaware courts have twice discussed the holding in *Coursey*, first in *State v. Trower*[27] and again in *Stevens v. State*.[28] In *Trower*, a police officer on patrol noticed a vehicle with dark tinted windows that prevented the officer from seeing the occupants inside.[29] He stopped the vehicle for a suspected window tint violation.[30] The defendant moved to suppress evidence seized as a result of the stop, arguing that reasonable articulable suspicion of a window tint violation must be based on an observation from inside the vehicle looking out.[31] The defendant argued that, depending on lighting conditions inside or outside the vehicle, there could be a very significant difference in one's ability to see into the vehicle versus

---

[24] *Id.*
[25] *Id.* at 848.
[26] *Id.*
[27] 931 A.2d 456 (Del. Super. 2007). The Court is unable to find any instance in which the holding of *Coursey* has been followed by this Court.
[28] 970 A.2d 257, 2009 WL 756513 (Del. 2009) (TABLE).
[29] 931 A.2d at 457.
[30] *Id.*
[31] *Id.* at 458.

one's ability to see out.[32]  Therefore, according to the defendant in *Trower*, a window tint violation is unenforceable except as a secondary offense (whereby the officer could examine the windows from inside after a traffic stop based on a different offense) because inability to see through the windows from the outside does not provide a reasonable basis to believe the window tint statute is being violated. [33]  The Court in *Trower* rejected all of the defendant's arguments, stating:

> It is true that the defendant could see out of the windows, because he was able to operate the vehicle on the roadway without running off the road.  The defendant's contentions, however, are based upon an undue emphasis on the purpose of the federal standard, as opposed to the standard itself.  The fact that the driver can see out of tinted windows does not establish that they allow 70% or more of light transmission, or rule out a reasonable suspicion that they do not.
>
> The contention that the officer must look at the windows from inside the vehicle before he can be reasonably suspicious that they violate the standard is unpersuasive.  "Reasonable suspicion" is not a demanding standard.  It is less than probable cause and considerably less than preponderance of the evidence.  The State's contention, that a reasonable suspicion of a violation arises where an officer cannot see the occupants in the vehicle, is more persuasive.[34]

The Court in *Trower* held that, "window tint which is so dark that one cannot see the occupants inside the vehicle creates a reasonable suspicion that it violates the

---

[32] *Id.*

[33] In making these arguments, the defendant in *Trower* relied upon Federal Motor Vehicle Safety Standard 205, specifically the "Purpose" section, which provides that, *inter alia*, the Standard is intended to ensure a necessary degree of transparency in windows *for driver visibility. Id.* at 458–59; *see* 49 C.F.R. § 571.205 S2.

[34] *Trower*, 931 A.2d at 459.

10

standard."[35] With regard to *Coursey*, former President Judge (now Justice) Vaughn found the facts in *Trower* distinguishable, but stated, "[t]o the extent that *Coursey* is not distinguishable . . . I respectfully decline to follow it."[36]

In *Stevens v. State*,[37] the police stopped a vehicle for playing loud music.[38] At the suppression hearing, the police officer who stopped the vehicle could not explain precisely what was prohibited by the applicable ordinance.[39] The defendant relied upon *Coursey* to conclude—due to a "mistake of law"—the police stopped his vehicle without reasonable articulable suspicion.[40] The Delaware Supreme Court rejected the defendant's argument, finding *Stevens* distinguishable from *Coursey* because the police officer "could objectively apply the Ordinance."[41] However, the Delaware Supreme Court pointed out that the Superior Court, in *Trower*, questioned *Coursey*.[42]

In addition to *Coursey*, Defendant relies on *McDonald v. State* in support of his argument that Officer Wiggins' misunderstanding of the requirements of

---

[35] *Id.*; *State v. Friend*, 2008 WL 9004456, at *3 (Del. Super. Nov. 26, 2008) ("Window tint that prohibits an officer from seeing a vehicle's occupants is enough to suspect the tint exceeds the limits." (citing *Trower*, 931 A.2d at 459)).
[36] *Trower*, 931 A.2d at 459 n.10.
[37] 970 A2d 257, 2009 WL 756513 (Del. 2009) (TABLE).
[38] *Id.* at *1.
[39] *Id.* at *2.
[40] *Id.* ("Moreover, another Superior Court judge has questioned *Coursey* in a more recent decision, *State v. Trower*.").
[41] *Id.*
[42] *Id.*

11

§ 4313 renders the traffic stop illegal.[43] In *McDonald*, police observed a vehicle lawfully parked in a private parking lot.[44] The police ran the vehicle's registration number, but the officer inadvertently transposed some of the digits.[45] Due to the officer's mistake, the system reported the vehicle as unregistered.[46] The police continued to observe the vehicle, and noticed when it exited the parking lot by turning onto the public roadway that the driver did not use a turn signal.[47] Believing the failure to use a turn signal constituted a traffic violation, the police stopped the vehicle.[48] The Delaware Supreme Court found that the alleged turn signal violation was the sole reason for the stop.[49] Because Delaware law does not require the use of a turn signal when entering a public roadway from private property, the Delaware Supreme Court held that the stop based upon the officer's mistaken understanding of 21 *Del. C.* § 4155 violated the defendant's Fourth Amendment rights.[50] On this point, Defendant further highlights a concurring portion of Vice Chancellor Noble's dissent:

> [A]s the majority properly determines, the right turn from the parking lot without the use of a blinker was not a violation of Delaware law and thus could not justify a warrantless stop. A police officer's good

---

[43] 947 A.2d 1073 (Del. 2008).
[44] *Id.* at 1075.
[45] *Id.*
[46] *Id.*
[47] *Id.*
[48] *Id.*
[49] *Id.* at 1080. In dissent, Justice Berger and Vice Chancellor Noble disagreed that the turn signal violation was the *only* basis for the stop. *Id.* at 1080–86.
[50] *Id.* at 1079–80 (discussing 21 *Del. C.* § 4155).

faith mistake of law, even one that is reasonable, does not survive scrutiny under the United States Constitution as the basis for a warrantless stop.[51]

Based on the foregoing language, Defendant concludes suppression is required in this case because Officer Wiggins was mistaken regarding the degree of tint permissible under Delaware law.

*McDonald* is distinguishable. In *McDonald*, the police did not have reasonable articulable suspicion that a turn signal violation occurred because the facts known to the police unambiguously did not constitute a violation of § 4155. Stated differently, because the alleged turn signal violation was the sole reason for the stop, the police would not have stopped the vehicle had they known the correct standard.

Here, Officer Wiggins credibly testified that he stopped Defendant's vehicle because the window tint was so dark he could not see the occupants in the vehicle, that he verified the vehicle did not have a medical waiver before stopping the vehicle, and that he still would have stopped the vehicle for a suspected tint violation had he known the exact percentage of light transmission required. As to Defendant's argument that no one would have been able to see inside the vehicle because it was nighttime and, therefore, the inability to see inside was not a reasonable basis for the stop, the Court does not find this argument persuasive in

---

[51] *Id.* at 1083 (Noble, Vice Chancellor, dissenting).

13

light of Officer Wiggins' credible testimony that the degree of window tint (not the ambient lighting) prevented him from seeing the occupants inside the vehicle. Considering the totality of the circumstances, as viewed through the eyes of a reasonable trained police officer, and combining objective facts with Officer Wiggins' subjective interpretation of those facts, the Court finds Officer Wiggins had reasonable articulable suspicion of a window tint violation. Under *Trower*, his inability to see the occupants of the vehicle due to the dark tint, coupled with the absence of a medical waiver, are sufficient to justify a stop to investigate a possible window tint violation.

## C. Consent to Search

Defendant argues that he did not consent to a search of the vehicle. In support of this argument, Defendant testified that Officer Wiggins never requested Defendant's consent to search the vehicle, and Defendant never gave Officer Wiggins consent to search the vehicle. At the time of the stop, Officer Wiggins was wearing a body camera, but the camera failed to record. Officer Wiggins testified that he believed the body camera was working, he requested consent to search from Defendant, and he received consent. The Court finds Officer Wiggins' testimony credible, and that the Defendant consented to the search.[52]

---

[52] Because the Court finds that the Defendant consented to the search, it need not address the parties' arguments regarding the inevitable discovery doctrine.

14

## VI. CONCLUSION

For the foregoing reasons, Defendant's Motion to Suppress is **DENIED**.

**IT IS SO ORDERED.**

Jan R. Jurden, President Judge