**Shaun S. DONALD, Defendant Below, Appellant,**

v.

**STATE of Delaware, Plaintiff Below, Appellee.**

No. 256, 2005.

Supreme Court of Delaware.

Submitted: April 12, 2006.

Decided: June 27, 2006.

Ronald G. Poliquin, Esquire of Dover, Delaware for Appellant.

John Williams, Esquire of the Department of Justice, Dover, Delaware for Appellee.

Before STEELE, Chief Justice, HOLLAND, BERGER, JACOBS, and RIDGELY, Justices constituting the Court en Banc.

RIDGELY, Justice.

Defendant–Appellant Shaun S. Donald appeals the Superior Court's denial of her motion to suppress evidence. She was convicted of maintaining a dwelling for keeping controlled substances, conspiracy second degree, possession of drug paraphernalia, and possession of a non-narcotic schedule I controlled substance.[1] On appeal, Donald challenges the reasonableness of an administrative search of the residence she shared with Terrance Harrison, who was on probation.

We conclude that the administrative search did not violate Donald's rights under the Fourth Amendment of the U.S. Constitution because the officers had consent to search the home from the probationer who lived there, reasonable grounds existed to support the search, and Donald did not object to the search of the residence she shared with Harrison. Accordingly, we affirm.

## I. Background

On November 4, 2004, Corporal David S. Hake, Jr. of the Delaware State Police stopped a vehicle operated by Terrance Harrison for registration and turn signal violations.[2] Once stopped, Corporal Hake discovered that Harrison was wanted for a probation violation. Furthermore, Corporal Hake noticed marijuana on Harrison's shirt. During a search of Harrison's vehicle, approximately four grams of crack cocaine, a marijuana cigar, a three-inch knife, and bottle of alcohol were discovered. Corporal Hake, a member of the Governor's Drug Task Force, called for the assistance of two Probation officers, Ramburg and Wheeler, who later arrived at the scene. Harrison and his passenger were arrested and taken to Delaware State Police Troop 3.

Harrison told the officers that he lived with his girlfriend, Defendant Shaun S. Donald. He gave his address as the house occupied by him and Donald in Magnolia, Delaware. Donald herself was not on probation. A pay stub found in the driver's side door of the vehicle and dated only a few days earlier corroborated this address as his home. This was not the address listed in Harrison's probation records, however.

Probation Officer Ramsburg sought and received permission from his supervisor to conduct an administrative search of the house, because Ramsburg believed there were exigent circumstances to justify a warrantless search for further evidence of illegal drug activity. Corporal Hake believed that word of Harrison's arrest would spread and that evidence at the residence would be destroyed.

---

1. In violation of 16 Del. C. § 4755(a)(5), 11 Del. C. § 512(2), 16 Del. C. § 4771(a), and 16 Del. C. § 4754(a), respectively.

2. There was a passenger, Lavar Lewis, with Harrison when he was stopped by Hakes.

Shortly after midnight, Corporal Hake accompanied Officers Ramburg and Wheeler to Harrison's residence. They knocked on the door and Donald answered. The probation officers informed her that they were there to search the residence because Harrison had been arrested for drug charges and was in violation of his probation. Donald verified that Harrison did in fact live at her residence as her live-in boyfriend.

Donald did not object to Ramburg and Wheeler entering the residence and beginning an administrative search. After Ramburg and Wheeler commenced the search, Corporal Hake asked Donald for her consent for him to join in the administrative search, and she gave it. Once the officers were inside the home, the evidence used to convict Donald was found in plain view.

Prior to trial, Donald moved to suppress the evidence seized at her home. The Superior Court denied the motion, holding that the administrative search of Harrison's residence by the probation officers was reasonable. The Superior Court also found that the probation officers had acted reasonably in determining that the home was in fact Harrison's residence.

## II. Discussion

On appeal, Donald challenges the Superior Court's denial of her motion to suppress the evidence found in her home during the search. We review the Superior Court's denial of a motion to suppress after an evidentiary hearing for abuse of discretion.[3] Where it is claimed that the Superior Court erred in formulating and applying the law to undisputed facts, our review is *de novo*.[4]

### A. The Officers Had Reasonable Grounds to Search the Home.

Donald's first claim is that the probation officers did not have reasonable grounds to believe that Harrison might be involved in criminal activity and that evidence would be at the home, even after Harrison was arrested for having drugs in his car. If there were reasonable grounds, the probation officers would be justified in conducting a warrantless administrative search of a probationer's residence. As a condition of his probation, Harrison had agreed to allow probation officers to search his home pursuant to Delaware Department of Corrections regulations.[5]

Both the United States and Delaware constitutions protect ordinary citizens from unreasonable searches and seizures.[6] As part of their criminal sanctions,

**3.** *Norcross v. State*, 816 A.2d 757, 762 (Del. 2003).

**4.** *Jones v. State*, 745 A.2d 856, 860 (Del.1999).

**5.** *See also United States v. Knights*, 534 U.S. 112, 121, 122 S.Ct. 587, 151 L.Ed.2d 497 (2001); *Fuller v. State*, 844 A.2d 290, 292 (Del.2004).

**6.** U.S. Const. Amend. IV; Del. Const. Art I, § 6. We previously summarized the protections afforded by the federal and Delaware Constitutions against unreasonable searches in *Scott v. State:*

The United States and Delaware Constitutions protect the right of persons to be secure from "unreasonable searches and seizures." Searches and seizures are per se unreasonable, in the absence of exigent circumstances, unless authorized by a warrant supported by probable cause. A recognized exception to the warrant requirement, however, is for searches that are conducted pursuant to a valid consent.

To be valid, a consent to search must be voluntary. The person giving such consent must also have the authority to do so. Third party authority to consent to a search must include both possession and equal or greater control, vis-a-vis the owner, over the area to be searched. *Scott v. State*, 672 A.2d 550, 552 (Del.1996).

probationers do not have the same liberties as ordinary citizens.[7] This Court has held that administrative searches of probationer homes require only reasonable grounds, even if the probation officers do not satisfy each technical requirement of the search and seizure regulations of the Department of Correction.[8] The special nature of probationary supervision justifies a departure from the usual warrant and probable cause requirements for searches, but a search of a probationer's home must be reasonable.[9]

The Superior Court concluded that a reasonable suspicion existed in this case to search Harrison's residence:

> The remaining issue is whether Probation Officer Ramsburg had reasonable suspicion to search Harrison's residence. Mr. Ramsburg arrived at the scene of a traffic stop of a vehicle that was believed to be registered to the Defendant. Harrison, wanted for violation of probation, was the driver of the vehicle. A green leafy substance, believed to be and field tested positive for marijuana, was located on Harrison's shirt. Harrison admitted to the officers that he was smoking marijuana. A bottle of gin and a bottle of brandy were also found in the vehicle. Harrison, who was under the age of 21, also admitted to drinking that evening. The most important discovery to this case, however, was found in the pocket of the driver's side door. Located there was a baggie that contained 9 loose rocks of crack cocaine and 1 piece of crack cocaine that was sealed in a little zip lock bag. The rocks were weighed and determined to be approximately 4 grams. Based on the quantity, packaging and location of the cocaine in the vehicle, the Officers had reasonable suspicion to believe that Harrison was engaging in the distribution of crack cocaine.

We agree. Further, there was evidence linking Harrison to the place to be searched—Donald's home. Harrison told the officers that he lived with Donald. He gave them the address, which was corroborated by his recent pay-stub with Donald's address printed on it. Based on the totality of the circumstances, we conclude that the Superior Court did not abuse its discretion when it found that the administrative search of Harrison's home was reasonable.

**B. The Fourth Amendment does not Require Express Consent from a Co–Occupant Present at Commencement of the Search when an Absent Co–Occupant Has Given Express Consent.**

■ We next examine whether the Fourth Amendment requires officers to obtain the express consent of a co-occupant who is present at the commencement of a search, when an absent co-occupant has already provided his or her consent. This Court has required a party who gives consent to have authority to do so, holding that a joint possessor of property may give consent to search jointly held property. Any evidence seized as a result of such a search may be used against the other occupant if the consenting party has sufficient control over premises to bind the joint

---

7. See *Griffin v. Wisconsin*, 483 U.S. 868, 107 S.Ct. 3164, 97 L.Ed.2d 709 (1987); *McAllister v. State*, 807 A.2d 1119 (Del.2002).

8. See, e.g., *Fuller v. State*, 844 A.2d 290, 292 (Del.2004) (citations and footnotes omitted).

9. *Fuller*, 844 A.2d at 292 (citing *Griffin*, 483 U.S. at 873–74, 107 S.Ct. 3164).

possessor to his consent.[10] "Sufficient control" is:

more frequently predicated upon a joint and equal possession and control of the premises searched. The line of reasoning which underlies the joint control doctrine may be stated as follows: the consenting person has the authority, acting in his own behalf and not as agent for the non-consenter, to permit a search of premises to which he has immediate right of possession and control; a search pursuant to such consent is reasonable, absent other circumstances tending to make it unreasonable; evidence that is the product of a reasonable search may be used against anyone. Thus, where two or more persons have joint and equal possession and control of the premises, the prevailing rule is that any one of them may consent to a search; and the evidence thus disclosed may be used against any of them.[11]

Thus, consent by a co-occupant may be sufficient as to other co-occupants.[12]

■ Similarly in *De Shields v. State*,[13] this Court reiterated that "[p]olice may conduct a warrantless search if consent is obtained from a third party who possesses common authority over or other sufficient relationship to the premises or effects sought to be inspected."[14] Determining whether there is common authority is a factual question that requires the trial court to consider:

the use of the property by persons generally having joint access or control for most purposes, so that it is reasonable to recognize that any of the co-inhabitants has the right to permit the inspection in his own right and that *others have assumed the risk that one of their number might permit the common area to be searched.*[15]

The United States Supreme Court held recently in *Georgia v. Randolph* that when a co-occupant is present and objects to a search, police may not search under the consent exception to the warrant requirement, despite having the consent of the other co-occupant.[16] The Court applied "the rule that a physically present inhabitant's *express refusal* of consent to a police search is dispositive as to him, regardless of the consent of a fellow occupant."[17] "The constant element in assessing Fourth Amendment reasonableness in consent cases ... is the great significance given to widely shared social expectations ..."[18]

■ In *Randolph* the United States Supreme Court rejected what had been the majority rule allowing the consent of one

---

10. *See Jenkins v. State*, 230 A.2d 262 (Del. 1967), *aff'd on other grounds*, 240 A.2d 146 (Del.1968), *aff'd*, 395 U.S. 213, 89 S.Ct. 1677, 23 L.Ed.2d 253 (1969).

11. *Jenkins*, 230 A.2d at 271 (quotations and footnote omitted).

12. *See, e.g., Jenkins*, 230 A.2d 262.

13. *De Shields v. State*, 534 A.2d 630 (Del. 1987).

14. *Id.* at 643 (citations and quotations omitted).

15. *Id.* (citations, quotations, and footnote omitted) (emphasis added).

16. *Georgia v. Randolph*, —— U.S. ——, ——, 126 S.Ct. 1515, 1519, 164 L.Ed.2d 208 (March 22, 2006) (defining a co-occupant, co-tenant, or co-inhabitant as one with common control and authority).

17. *Id.* at 1528 (emphasis added). It held, "a warrantless search of a shared dwelling for evidence over the express refusal of consent by a physically present resident cannot be justified as reasonable as to him on the basis of consent given to the police by another resident." *Id.* at 1526.

18. *Id.* at 1521.

owner to override the consent of another owner when both were present. Thus, in situations where a non-probationer having common control and authority over a probationer's home *expressly objects* to a warrantless search, there can be no search unless a valid exception to the requirement for a warrant applies.

 Donald invites us to expand *Randolph* and require officers affirmatively to seek consent from a co-occupant even when another co-occupant has already provided consent. We decline to do so. Police are not required "to take affirmative steps to find a potentially objecting co-tenant before acting on the permission they had already received."[19] Likewise, police are not required to take affirmative steps to seek consent from a potentially objecting co-tenant, even when present. Applying *Randolph* to the facts before us, Donald could have prevented the search of her home without a warrant by expressly objecting to it. She did not. We view *Randolph* as requiring only that officers stop a warrantless search based upon the consent of a co-occupant when another co-occupant of the home expressly objects to the search.

While a co-occupant does not forfeit her own Fourth Amendment rights by allowing a probationer to live with her, she must object to the search to which the probationer has consented in order to prevent a search without a warrant. Because Donald did not do that, we conclude that the Superior Court did not err when it denied the motion to suppress.

## C. Even without the Police Officer's Participation, the Evidence Would Have Been Found.

Finally, we examine whether Donald's consent to Corporal Hake's request to join the probation officers in the search is relevant on appeal. Donald contends that she believed she had no choice but to consent to the request from the police officer to join the search with the probation and parole officers because the probation officers were in her home and had begun their search. She challenges the voluntariness of her consent to Corporal Hakes' request to join in the search of the premises.

 We do not need to consider the merits of this claim. Even if we were to accept her argument that her consent to Corporal Hake's search was invalid, the outcome here would not be different. The seized evidence was in plain view. Donald has not shown that the probation officers would not have found the evidence, nor has she shown that Corporal Hake was in a unique position to discover the evidence.

### III. Conclusion

The judgment of the Superior Court is AFFIRMED.

**19.** *United States v. McGregor*, 2006 WL 997088, 2006 U.S. Dist. LEXIS 22503 (D.Cal., Apr. 17, 2006).