Rashaun J. MILLER, Defendant Below, Appellant,

v.

STATE of Delaware, Plaintiff Below, Appellee.

No. 138, 2006.

Supreme Court of Delaware.

Submitted: Jan. 31, 2007.
Decided: April 10, 2007.

 

found guilty of possessing drug paraphernalia. Miller was found not guilty of maintaining a dwelling. He was also found not guilty of possession with intent to deliver a non-controlled substance. Miller was sentenced to one year of incarceration.

In this direct appeal, Miller challenges the Superior Court's denial of his motion to suppress evidence. Miller raised two claims in his opening brief: first that without any reasonable suspicion, police seized him the moment they exited their unmarked van and ordered him to the ground; and second, the subsequent handcuffing and transportation to his residence amounted to an arrest unsupported by probable cause. This Court asked counsel to file supplemental memoranda and address three specific questions: first, assuming Miller's initial detention was lawful, were Miller's rights violated when the probation officer inquired as to Miller's probationary status; second, did the probation officer have authority to transport Miller to his home to verify his address; and third, was discovery of the drugs inevitable regardless of whether the probation officer was authorized to transport Miller to his residence.[1]

We have concluded that Miller's initial detention for loitering was legal, the question about Miller's probationary status was permissible, transporting Miller to his last known address was reasonable, and that the administrative search of Miller's new residence was proper. Therefore, the Superior Court correctly denied Miller's motion to suppress. Accordingly, the judgments of the Superior Court must be affirmed.

### Facts

On the evening of May 25, 2005, a team of officers from the Wilmington Police De-

Christopher D. Tease, Esquire, Wilmington, Delaware, for appellant.

John Williams, Esquire, Department of Justice, Dover, Delaware, for appellee.

Before STEELE, Chief Justice, HOLLAND, BERGER, JACOBS and RIDGELY, Justices, constituting the Court en Banc.

HOLLAND, Justice.

The defendant-appellant, Rashaun J. Miller, appeals from his judgments of conviction following a jury trial in the Superior Court. Miller was indicted on charges of Trafficking in Cocaine, Possession with Intent to Deliver Cocaine, Use of a Dwelling for Keeping Controlled Substances, Possession of Cocaine, and Possession of Drug Paraphernalia. At the time of his arrest, Miller was serving a probationary sentence imposed by the Superior Court.

The jury returned a verdict of guilty on Possession of Cocaine, a lesser charge of Trafficking in Cocaine. Miller was also

1. Our dispositions of the other issues make it unnecessary to address this inquiry.

partment, New Castle County Police Department, Delaware State Police, and the Department of Correction, Probation and Parole, were conducting a "sweep" of the City of Wilmington to "eradicate" public nuisance and quality of life crimes. Surveillance officers had observed three subjects, including a person sitting on the steps of an unoccupied business building, on the southeast corner of Third and Lincoln Streets for about twenty to thirty minutes. The "sweep" team was called to respond to this location.

Corporal George Taylor of the Wilmington Police Department and the other "sweep" team officers arrived at the corner of Third and Lincoln in an unmarked van. The area was described as one that is known for drug activity and other criminal conduct. Present in the van along with Corporal Taylor were members of the New Castle County Police, members of the Delaware State Police, and Probation and Parole Officer James Kelly. Officer Kelly estimated that there were eight or nine officers in the van. The police officers wore blue tactical vests with "Police" written on the right breast and "Police" written on the back.

The officers exited the van yelling "Police." They observed Miller still sitting on the steps of the vacant business and ordered him to get on the ground. The officers were armed and their weapons were visible to Miller. A male and female standing nearby were ordered to turn around and place their hands on the wall. A patdown search of all three individuals revealed no weapons or hidden contraband.[2]

During the initial stop for loitering, Probation Officer Kelly asked Miller his name, and whether he was on probation. Miller replied that he was on Level III probation. Kelly then called the probation monitoring center to make sure that Miller was in good standing. The center confirmed that Miller was on Level III probation, and his address was reported as 801 West Fifth Street, Apartment C. Officer Kelly was also advised that Miller had an open charge for violating the curfew condition of his probation four months earlier.

Because Miller had been loitering quite a distance from his reported residence, Kelly informed his supervisor that he would detain Miller until he could verify Miller's address. The supervisor had no objection. Kelly and two police officers handcuffed Miller and transported him in a van to the reported address to verify that Miller lived there. Upon arriving, Kelly interviewed Miller's sister, Rashaundra Miller, who lived at 801 West Fifth Street, Apartment C. She informed Kelly that Miller had moved out about seven days earlier, and was living with a Phyllis Young in Apartment O in the same townhouse complex.

By not advising his probation officer of any change of residence within seventy-two hours, Miller had violated a condition of his probation. Kelly notified his supervisor of this violation and his supervisor approved an administrative search of Miller's new residence. Kelly went to Apartment O, was informed that Miller lived there, and was shown Miller's belongings in an upstairs bedroom.

Officer Kelly searched Miller's new residence, with the police officers there for security. There was a clothes basket in that bedroom, and on top of the basket was an orange Nike bag. Inside the bag were letters addressed to Rashaun Miller.

---

**2.** Corporal Taylor testified at trial about what happened when he initially approached the defendant: "We approached Mr. Miller. We conducted a pedestrian stop on Mr. Miller and the other two subjects. They were patted down for officer safety purposes."

Underneath the bag wrapped in male clothes was an off-white, chunky substance that later field tested positive for crack cocaine and weighed thirty grams. Officer Kelly turned the drugs over to the police officers and Miller was arrested. The entire process, from the time Miller was ordered to the ground until the police found the crack cocaine, lasted approximately thirty minutes.

Miller was then transported to the Wilmington police station. Upon arrival, Miller was informed that he was going to be strip-searched. Prior to the search, Miller removed a clear plastic knotted sandwich bag from the area of his crotch. The bag contained an off-white chunky substance, which later tested positive for crack cocaine and weighed approximately 3.5 grams.

### Suppression Motion Denied

A contested violation of probation hearing was held in the Superior Court. At the time, the Superior Court also heard Miller's motion to suppress the evidence relating to the recent criminal charges. At the conclusion of the joint hearing, the judge upheld the initial stop of Miller and the subsequent search of his residence. The Superior Court denied Miller's motion to suppress in a bench ruling, as follows:

> I think the officers had a right to approach this group, to enforce the loitering statute and the right to ask the identities of those individuals. When they learned that Mr. Miller was a probationer, his status did change because he was subject to be searched on lesser grounds than an ordinary individual. When they learned that he has not reported a change of address, given the place where he is, a high drug area, given his convictions for drugs, there is

ample grounds for them to ask for an administrative search warrant.

For the probation violation, Miller was sentenced to three years followed by six months of probation. Thereafter, the new criminal charges that resulted in this appeal proceeded to trial.

### Miller's Arguments

Miller argues that he was illegally detained when the police conducted a general sweep under the loitering statute without any reasonable suspicion that the statute was being violated. Miller further argues that his illegal detention ripened into an illegal arrest when he was handcuffed and transported to his former residence without probable cause to believe that he had committed or was committing a crime. Miller contends, therefore, that the crack cocaine later found at his residence and on his person should have been suppressed as the fruit of his illegal detention and arrest.

### Initial Detention Legal

■ Title 11, section 1902 codifies the standards for stops and temporary detentions under Delaware law.[3] That section reads, in pertinent part:

> § 1902. Questioning and detaining suspects. (a) A peace officer may stop any person abroad, or in a public place, who the officer has reasonable ground to suspect is committing, has committed or is about to commit a crime, and may demand the person's name, address, business abroad and destination.

The term "reasonable ground" has the same meaning as reasonable and articulable suspicion.[4] In order to satisfy the "reasonable and articulable" standard, the officer must point to specific facts which, viewed in their entirety and accompanied

---

3. *Jones v. State*, 745 A.2d 856, 861 (Del.1999).  4. *Id.*

by rational inferences, support the suspicion that the person sought to be detained was violating the law.[5] The totality of circumstances, as viewed through the eyes of a reasonable, trained officer in the same or similar circumstances, must be examined to determine if reasonable suspicion has been properly formulated.[6]

Miller argues that there were no facts, such as some suspicious behavior on his part, that justified his detention under the loitering statute, specifically, section 1321(6). The Delaware loitering statute contains six subsections, each making various actions a potential violation. The most general provision is subsection (6) which reads, in pertinent part:

> A person is guilty of loitering when: (6) The person loiters ... at a time or in a manner not usual for law-abiding individuals under circumstances that warrant alarm for the safety of persons or property in the vicinity, especially in light of the crime rate in the relevant area. Unless flight by the accused or other circumstances make it impracticable, a peace officer shall, prior to any arrest for an offense under this subdivision, afford the accused an opportunity to dispel any alarm which would otherwise be warranted, by requesting identification and an explanation of the person's presence and conduct.[7]

The record reflects that the police were aware of community concerns about weapons activity, drug dealing, and property damage caused by individuals who loitered but did not reside in the area. According to Corporal Taylor, the police stopped Miller simply to advise or warn him of the loitering laws.[8] When asked by defense counsel if the reason for the stop was to warn Miller, he responded, "absolutely." Corporal Taylor also testified that he believed an actual warning was given to Miller and that the stop was also intended to find out if Miller "belong[ed] in the block."

Although the Delaware statute does not generally define loitering, a common definition of the word "loiter" is "to remain in an area for no obvious reason."[9] A reasonable, trained police officer, viewing a person sitting on the steps of a vacant building at night for an extended period of time doing nothing, would have a reasonable and articulable suspicion that the person was loitering.[10] Accordingly, in accordance with Delaware's loitering statute, such activity would warrant a brief detention to investigate or warn the person to move on.[11]

The record reflects that the police "sweep" team may have shown more initial force than is generally customary to enforce the loitering statute. Nevertheless, the police and probation officers had rea-

5. *Downs v. State,* 570 A.2d 1142, 1145 (Del. 1990).

6. *Jones v. State,* 745 A.2d at 861.

7. Del.Code Ann. tit. 11, § 1321.

8. Corporal Taylor was asked at trial whether any suspicious activity by any of the three individuals was observed.

> They were loitering. We have a major problem here in the City that individuals sometimes take up residence in a block or on a sidewalk that don't reside there, thus

causing the neighbors some concern that the property may be damaged, cars might be broken into or engage in some type of drug activity or weapons activity.

9. *Merriam Webster's Collegiate Dictionary* (10th ed.1997).

10. *See generally Purnell v. State,* 832 A.2d 714, 719–20 (Del.2003); *Hicks v. State,* 631 A.2d 6, 9 (Del.1993) (citing *Coleman v. State,* 562 A.2d 1171, 1174 (Del.1989)).

11. *See, e.g., Carter v. State,* 814 A.2d 443, 444–45 (Del.2002).

sonable and articulable [12] suspicion that Miller was loitering because: the surveillance team watched him sit on the step of the vacant business for twenty to thirty minutes; the vacant building was formerly used in an illegal bookmaking operation; it was 9 p.m., and the general area was known for drug problems and other criminal activity. Therefore, we hold the Superior Court correctly concluded that the officers' initial detention of Miller to enforce the loitering statute was lawful.

### Probation Question Permissible

■ During the initial lawful detention of Miller to enforce the loitering statute, Probation Officer Kelly asked Miller whether he was on probation. In *Muehler v. Mena*, the United States Supreme Court held that questioning someone who was being lawfully detained about her immigration status was not a Fourth Amendment violation even though her immigration status was not related to her detention:

> We have held repeatedly that mere police questioning does not constitute a seizure. Even when officers have no basis for suspecting a particular individual, they may generally ask questions of that individual; ask to examine the individual's identification; and request consent to search his or her luggage. As the Court of Appeals did not hold that the detention was prolonged by the questioning, there was no additional seizure within the meaning of the Fourth Amendment. Hence, the officers did not need reasonable suspicion to ask Mena for her name, date and place of birth, or immigration status.[13]

**12.** *Jones v. State*, 745 A.2d 856, 861 (Del. 1999).

**13.** *Muehler v. Mena*, 544 U.S. 93, 101, 125 S.Ct. 1465, 161 L.Ed.2d 299 (2005) (internal citations and quotations omitted).

Similarly, it was permissible for Officer Kelly to ask Miller if he was on probation, while Miller was lawfully detained initially to enforce the loitering statute.

### Probation Detention Reasonable

■ When Miller informed Officer Kelly that he was on Level III probation, the situation changed from a police investigation of loitering to a probation operation. The State argues that what transpired thereafter was reasonably related to furthering the goals of probation. We conclude that the record supports the State's argument.

When Miller told Officer Kelly that he was on probation, Officer Kelly immediately contacted the monitoring center to confirm Miller's probationary status and Miller's current address.[14] Upon learning that Miller was loitering at night in a neighborhood that was "quite a distance from" his reported residence, Officer Kelly contacted his supervisor to inform him of his (Kelly's) intention to verify Miller's address. Kelly's supervisor had "no problem" with this plan. Miller was then handcuffed and transported in a van to the address he had previously reported to Probation and Parole. The police officers who accompanied Probation Officer Kelly and Miller were there to provide security for what had become a Probation and Parole operation.

■ Miller argues that Probation Officer Kelly acted unreasonably by detaining and transporting him to verify whether Miller was living at his reported address. The United States and the Delaware Con-

**14.** Officer Kelly was also informed that Miller had an open charge for violating his probation four months earlier, in January 2005, by violating his curfew. Counsel for Miller acknowledges that Miller violated his probation in January 2005.

stitutions both protect ordinary citizens from unreasonable searches and seizures.[15] Probationers, however, do not have the same liberties as ordinary citizens.[16] As a condition of release from prison, all probationers are required to furnish the probation authorities with their place of residence and to report any change of address within seventy-two hours.[17] Since Miller was loitering "quite a distance" from his reported address and given the "special nature of probationary supervision," [18] we hold that it was reasonable for Probation Officer Kelly to continue to detain Miller while verifying that Miller was still residing at the location Miller had provided as a condition of his probation.

### Administrative Search

Probation Officer Kelly interviewed Miller's sister when they arrived at Miller's last known address. She advised Officer Kelly that Miller had moved one week earlier. After informing his supervisor of Miller's probation violation (failure to report a change of residence within seventy-two hours), Officer Kelly obtained permission from his supervisor to perform an administrative search of Miller's new residence.[19] Once Officer Kelly discovered what appeared to be crack cocaine in Miller's bedroom, he summoned the Wilmington police officers who arrested Miller. Miller does not challenge the legality of the administrative search at his new residence.[20]

### Conclusion

The Superior Court properly denied Miller's motion to suppress. The judgments of the Superior Court are affirmed.

**15.** U.S. Const. amend. IV; Del. Const. art. I, § 6. See Jones v. State, 745 A.2d 856, 860 (Del.1999) ("An individual's right to be free of unlawful searches and seizures in Delaware is secured by two independent, though correlative sources.").

**16.** See Griffin v. Wisconsin, 483 U.S. 868, 873–75, 107 S.Ct. 3164, 97 L.Ed.2d 709 (1987); McAllister v. State, 807 A.2d 1119, 1124 (Del.2002).

**17.** Delaware Sentencing Accountability Commission: Benchbook 2006, Conditions of Probation p. 107, created under Del.Code Ann. tit. 11, § 6580 ("You must report any changes of residence and/or employment within 72 hours to you (sic) Supervising Officer.").

**18.** Donald v. State, 903 A.2d 315, 319 (Del. 2006).

**19.** Id. ("The special nature of probationary supervision justifies a departure from the usual warrant and probable cause requirements for searches....").

