## IN THE SUPERIOR COURT OF THE STATE OF DELAWARE

|                          |     |                            |
| ------------------------ | --- | -------------------------- |
| STATE OF DELAWARE        | )   |                            |
|                          | )   |                            |
|                          | )   |                            |
| v.                       | )   | Crim. I.D. No.: 1610017030 |
|                          | )   |                            |
|                          | )   |                            |
| CHARLES FAX,             | )   |                            |
|                          | )   |                            |
| Defendant.               | )   |                            |

## OPINION

Submitted: May 30, 2017
Decided: June 2, 2017

*Upon Consideration of Defendant's Motion to Suppress,*
**GRANTED.**

Jeffrey M. Rigby, Esquire, Deputy Attorney General, Department of Justice, Wilmington, Delaware. *Attorney for the State.*

Benjamin S. Gifford IV, Esquire, The Law Office of Benjamin S. Gifford IV, Wilmington, Delaware. *Attorney for the Defendant.*

**MEDINILLA, J.**

# INTRODUCTION

Defendant Charles Fax ("Fax") filed this Motion to Suppress after officers with the Governor's Task Force conducted an administrative search of his residence on October 26, 2016. Fax argues that the administrative search lacked reasonable suspicion under the Fourth Amendment of the United States Constitution, Article I, Section 6 of the Delaware Constitution, and Delaware statutory law. The Court agrees and finds that the State failed to establish that the officers had reasonable suspicion to conduct an administrative search of Fax's residence. As such, the Motion to Suppress is **GRANTED**.

## FACTUAL AND PROCEDURAL BACKGROUND[1]

### *Factual Background*

On August 1, 2016, Fax was sentenced to Level III probation after he was convicted of Drug Dealing (Tier 2). His first visit with his probation officer, Officer James Matthew Keen ("Officer Keen"), occurred on August 9, 2016. Fax met with Officer Keen weekly, from August to October. During this period, he was fully compliant with his probation. However, on October 11, 2016, Fax tested

---

[1] The Court's recitation of the facts is based on Fax's Motion and the State's Response, as well as the evidence presented at the Suppression Hearing on May 30, 2017.

1

positive for marijuana following a routine urine test.[2] Officer Keen met with Fax on two separate occasions following the positive urine test: October 17th and 25th, 2016. On the 17th, Officer Keen instructed Fax to undergo a substance abuse evaluation. Fax complied. On October 25th, Officer Keen and Fax met to discuss the results of the evaluation, which determined that Fax did not require substance abuse treatment. Officer Keen did not write a violation of probation report and testified that he did not intend to do so.

On October 26, 2016, Officer David Tuohey ("Officer Tuohey"), a probation officer assigned to the Governor's Task Force at Troop 2, performed an electronic query on the Delaware Automated Correction System ("DACS"). Officer Tuohey testified that, on this particular night, the rainy weather prevented his team from conducting their "proactive functions" (e.g., surveillance and controlled drug buys). As a result, he and his partner "split the alphabet" and started running electronic searches in DACS for all Level III probationers in the 19702 zip code. When asked why they chose Level III probationers, he stated that these probationers are more often serving probation for felony convictions. Further, when asked why they chose this particular zip code, Officer Tuohey testified that it was simply due to rainy weather conditions, short-staffing, and close proximity to

---

[2] Officer Keen testified that he did not conduct this test, but that another unknown probation officer conducted it. He testified that the results of the test were likely reported between two to four days after the test was administered.

Troop 2. He confirmed that no "tip" or other information regarding Fax prompted the search; rather, the goal of the search was to find probationers for whom his team would conduct administrative searches.

Officer Tuohey's DACS inquiry revealed that Fax was serving Level III probation at his residence in Newark for Drug Dealing. DACS also noted Fax's October 11th positive urine screen fifteen days earlier. He testified that—based solely on this factor—he contacted his supervisor for a telephonic case conference. Officer Tuohey and his supervisor reviewed the following "pre-search considerations," as reflected on the Arrest/Search Checklist:[3]

> (1) Offender believed to possess contraband.
> (2) Offender is in violation of probation[]. . . .
> [. . .]
> (4) Approval from Supervisor, Manager, or Director.
> (5) Proper planning for search completed.
> (6) Sufficient staff to search.
> (7) Individual responsibilities assigned.
> (8) Police called to provide search security. . . .[4]

After their case conference, Officer Tuohey's supervisor granted him permission to search Fax's residence. Delaware State Police Officers Gliem and Hogate joined Officer Tuohey at Fax's residence that night at 10:35 p.m. Fax and

---

[3] *See* Fax's Motion at Ex. B.

[4] *Id.* Items three and nine in this list, "Information from informant is corroborated," and "Search team members have been properly trained," were not checked as having been reviewed with his supervisor.

3

his co-defendant, Christopher Patterson, were present in the residence at the time of the search.

The administrative search revealed that Patterson, Fax's nephew, had been living in the residence for a few days and admitted to smoking marijuana after the officers detected an odor of burnt marijuana throughout the residence. The officers discovered a black digital scale next to a safe located on the floor of Patterson's bedroom. Marijuana ashes were located near the safe. A search of the garage revealed wrapped bundles of heroin—later determined to be 9.765 grams of heroin. Additionally, 30.57 grams of cocaine were discovered in a kitchen trashcan. After receiving *Miranda* warnings, Patterson admitted to possessing the cocaine and the scale. Neither admitted to possessing the heroin.

### *Procedural Background*

Fax and Patterson were indicted for Drug Dealing, two counts of Aggravated Possession, and Conspiracy Second Degree. Fax filed this Motion on May 1, 2017. The State responded on May 19, 2017. A Suppression Hearing was held on May 30, 2017.

## DISCUSSION

### A.    Reasonable Suspicion to Search

The Fourth Amendment of the United States Constitution and Article I, Section 6 of the Delaware Constitution protect against "unreasonable searches and

4

seizures."[5] Principal among the protections of the Fourth Amendment is a citizen's right to be free from searches into his home absent a warrant or an applicable exception to the Warrant Clause.[6] A recognized exception to the need for a search warrant is the "special needs" exception to the Warrant Clause.[7] This umbrella term encompasses warrantless searches of a probationer's home conducted pursuant to a regulatory scheme that "meets 'reasonable legislative or administrative standards.'"[8] Therefore, probationers enjoy an abridged Fourth Amendment right to be free from warrantless searches of their homes, as probation is one point on a "continuum of possible punishments" and the rehabilitative goals inherent in probation are best served by permitting the State some "impingement upon [the probationer's] privacy."[9]

Delaware law, however, "does not permit suspicionless searches of probationer . . . residences."[10] Instead, the State must have "reasonable grounds"

---

[5] U.S. CONST. amend. IV; DEL. CONST. art. I, § 6. *See, e.g.*, *Payton v. New York*, 445 U.S. 573, 585-87 (1980).

[6] *See Payton*, 445 U.S. at 586-87 (quoting *Coolidge v. New Hampshire*, 403 U.S. 443, 474-45, 477-78 (1971)) (discussing warrantless search of home as "presumptively unreasonable").

[7] *See generally Ferguson v. City of Charleston*, 532 U.S. 67 (2001).

[8] *Griffin v. Wisconsin*, 483 U.S. 868, 873 (1987) (quoting *Camara v. Municipal Court*, 387 U.S. 523, 538 (1967)).

[9] *Id.* at 874-45.

[10] *Sierra v. State*, 958 A.2d 825, 829 (Del. 2008).

or "reasonable suspicion" to search the probationer's residence.[11]  "'Reasonable suspicion' exists where the 'totality of the circumstances' indicates that the officer had a 'particularized and objective basis' for suspecting legal wrongdoing."[12] Furthermore, probation officers must conduct searches in "accordance with Department [of Corrections] procedures," which are incorporated into 11 *Del. C.* § 4321(d).[13]  Specifically, before conducting an administrative search, probation officers must comply with the regulations found in the State of Delaware Department of Correction Bureau of Community Corrections Probation and Parole Procedure 7.19 ("Procedure 7.19").[14]

The State argues that the sole basis of a fifteen-day-old failed drug screen was sufficient to establish reasonable suspicion to search Fax's residence.  Further, the State argues that Officer Tuohey "substantially complied" with Procedure 7.19 when he conducted the case conference with his supervisor before conducting the search.[15]  In support of these two contentions, the State suggests that the bulk of Delaware case law interpreting reasonable suspicion in the context of

---

[11] *Donald v. State*, 903 A.2d 315, 319 (Del. 2006).

[12] *Sierra*, 958 A.2d at 825 (quoting *United States v. Arvizu*, 543 U.S. 266, 273 (2002)) (citing *Fuller v. State*, 844 A.2d 290, 291-93 (Del. 2004)).

[13] *Culver v. State*, 956 A.2d 5, 10 (Del. 2008) (quoting 11 *Del. C.* § 4321(d) (2008)).

[14] *See, e.g., Sierra*, 958 A.2d at 829-30.

[15] The State did not argue Fax consented to the administrative search, either in its Response to the Motion or during the Suppression Hearing.  Therefore, the Court does not consider that issue in this Opinion.

administrative searches of probationers' residences is inapposite because Officer Tuohey did not conduct the DACS search based on an external tip. In other words, the State argues that, *because* there was no information for Officer Tuohey to consider from an outside source, the lack of a tip *bolsters* the State's argument that one fifteen-day-old failed drug test suffices as reasonable suspicion to conduct the administrative search of Fax's residence.[16]

Notwithstanding the State's argument, case law interpreting administrative searches in the context of an external tip to a probation officer before the case conference is highly instructive to the case *sub judice*. For example, a failed drug test was considered by the probation officer in *Culver v. State*.[17] In *Culver*, the probationer had tested positive for drugs on three separate occasions. The first failed test was shortly after he started probation. By the third test, his levels of marijuana had come down. His fourth test was negative for drugs. At no point did his supervising officer file a violation of probation report for the failed drug tests. Nevertheless, the probation officer who conducted the administrative search in *Culver* utilized these past drug tests in his reasonable suspicion analysis.[18]

The majority in *Culver* found the past drug tests (and past curfew violations) insufficient, on their own, to provide reasonable suspicion to search as of the date

---

[16] When questioned, the State could not cite to any authority to support this position.

[17] 956 A.2d 5 (Del. 2008) (3-2).

[18] *See id.* at 9.

7

of the administrative search.[19]    A key portion of the majority's opinion is instructive to the present case:

> When examining whether the failed drug test and the missed curfew, without more, could support reasonable suspicion that would justify an administrative search, it is important to remember that both incidents had already occurred without probation officers ever considering a search of Culver's person or home before October 16. Nor is there any evidence of record that probation officers in fact intended to search Culver in the foreseeable future, much less on or before October 16. That leads us inescapably to the conclusion that the probation officers did not consider the failed drug test and the missed curfew to be sufficient reasons under their protocols to search Culver's home on October 16.[20]

In the present case, Officer Keen testified that the failed drug screen was a "technical" violation.  However, he stated that even after two follow-up visits with Fax, where the focus was on his substance abuse treatment, the failed drug test did not raise any alarms sufficient to seek an administrative warrant at that time.  It was not until Fax was arrested after the administrative search did Officer Keen file a violation of probation report for Fax.  On this record, Fax's isolated, two-week-old drug test falls well below the indicia of reasonable suspicion present in *Culver*.

---

[19] *See id.* at 14-15.

[20] *Id.*

Additionally, the Court finds *State v. Perry Johnson*[21] particularly instructive to the present case. In *Perry Johnson*, a probation officer received an email tip that the probationer was known to "ride around the neighborhood at night with his radio blasting" and sell drugs from a park located near his residence. The officer, knowing the probationer was on Level III probation, searched DACS and confirmed that the probationer: (1) had recently tested positive for marijuana; (2) had a curfew violation; (3) had missed an office visit; and (4) failed to complete two court-ordered behavioral treatment courses. Despite these violations, his probation officer had not submitted a violation of probation report. The officer conducted a case conference with his supervisor without contacting the probationer's supervising officer. The *Johnson* Court held the officer lacked reasonable suspicion to search the probationer's residence. The Court found that, while any one of the items above "would justify not only a home visit but potentially a violation of probation by the court[,]" the officer failed to connect the past uncharged violations with a search of the probationer's residence.

In the present case, the information available to Officer Tuohey falls well below the information available to the probation officer in *Perry Johnson*. Moreover, the latter case reveals the significant lacuna of facts Officer Tuohey had before conducting a case conference with his supervisor. Unlike the officer in

---

[21] 2014 WL 6661154 (Del. Super. Oct. 30, 2014).

9

*Johnson*, whose inquiry began with a tip of potential drug dealing in a local park near the probationer's residence, Officer Tuohey knew only two things about Fax: one, he was serving Level III probation for Drug Dealing (Tier 2); and two, he had a positive urine screen for marijuana fifteen days earlier. He had no tip of questionable behavior, no history of curfew violations, no missed office visits, and no reported noncompliance with court-ordered treatment. Based on similar facts considered insufficient in *Culver* and *Johnson*, the Court finds that Officer Tuohey did not have reasonable suspicion to conduct an administrative search of Fax's residence.

## B. The Self-Initiated DACS Search

Beyond the legal basis for the search, this Court is troubled by the purported "practice" of conducing self-initiated DACS searches without adequate corroboration of a link between the reported violation of probation and a search of the probationer's residence. The Fourth Amendment was principally drafted to eliminate the practice of "general warrants."[22] While a probationer clearly loses the full protection of the Fourth Amendment under Delaware law, its protection does not dissipate entirely.[23] The facts of the present case highlight the need for a

---

[22] *See Wheeler v. State*, 135 A.3d 282, 296-99 (Del. 2016).

[23] *Sierra v. State*, 958 A.2d 825, 829 (Del. 2008).

10

threshold analysis of reasonable suspicion before an administrative search warrant is requested in accordance with Procedure 7.19.

The State's position that there was compliance with Procedure 7.19 despite any tip or additional police/probation corroboration is concerning. Were the Court to accept this argument, any probation officer at any time could forego surveillance methods, disregard or give lesser credence to information from reliable sources, and simply perform random DACS queries of probationers in order to conduct residential searches. As the majority implied in *Culver,* reasonable suspicion to search is a forward-looking analysis, made from an assessment of the facts as they appear to the probation officer before conducting the case conference:

> Procedure 7.19 makes it plain that probation officers must rationally assess the facts known to them *before* reaching the critical conclusion that there is a reasonable basis to search a probationer's dwelling.[24]

Of particular concern to the Court is the Potemkin effort of this DACS-initiated search: one that exhibits trademark properties of a fishing expedition. Officer Tuohey testified that his goal was to conduct an administrative search that night. Contrary to the mandates under *Culver,* he searched first and *then* found the facts to support the search. In the face of inclement weather, the DACS net was cast serendipitously on Fax—he was closest to Troop 2, after all. Fax was fish number one in the 19702 barrel.

---

[24] *Culver*, 956 A.2d at 13 (emphasis added).

Officer Tuohey testified that, as part of the Governor's Task Force, his unit conducts proactive law enforcement functions. He admitted that there is no policy or procedure that authorizes random DACS searches such as the one in this case; however, it is a "practice" his team employs. When Officer Tuohey saw Fax's positive urine screen in DACS, he acknowledged that the DACS entries also showed the follow-up meetings between Officer Keen and Fax, and he knew that these visits did not result in either a violation report or recommendation for substance abuse treatment. He testified, nevertheless, that this information did not change his belief that Fax was still using or possessing marijuana or contraband. He further testified that, without any additional information, such as contacting Officer Keen, he concluded that Fax's use must be occurring at his residence.

As discussed in *Perry Johnson*, this Court finds that any nexus between Fax's failed drug test and his residence is speculative. Even in *Culver*, there was an anonymous tip about suspected drug activity *in the probationer's home* from an unknown caller with no past proven reliability. Here, there was no indication that there was any suspected drug use or activity in Fax's home. Officer Tuohey's suspicion that Fax must be using drugs in his home was simply a hunch.

This Court does not challenge the practices of the Governor's Task Force in this ruling. As Officer Tuohey testified repeatedly, their function is intended to add an "additional layer of supervision" in a proactive manner. Nonetheless,

12

Defense counsel was correct to point out that the probation officer's role is not identical to the role of law enforcement. The Supreme Court highlighted this point in *Pendleton v. State*.[25] The *Pendleton* Court's admonishment to probation officers is worth repeating here:

> We remind all probation officers to pursue the rehabilitation of their probationers as fervently as they pursue compliance, curfew checks, spontaneous searches, and deterrence. Delaware law places the responsibility upon probation officers of reintegrating probationers into society by creating treatment plans to "alleviate [the] conditions which brought about the criminal behavior," "secur[ing] employment," and "us[ing] all suitable methods to aid and encourage them to bring about improvement in their conduct and conditions and to meet their probation or parole obligations." Any neglect of these important responsibilities only denigrates society's trust and confidence in the corrections system.[26]

## CONCLUSION

This Court finds that there is insufficient evidence for a finding of reasonable suspicion to justify the administrative search in this case. The State has not met its burden of proving the search comported with the Fourth Amendment of the United States Constitution, Article I, Section 6 of the Delaware Constitution, and Delaware statutory law. As such, the evidence seized from the search of Fax's

---

[25] 990 A.2d 417 (Del. 2010).

[26] *Id.* at 421 (footnotes omitted).

13

residence must be suppressed as the fruit of an unlawful search.[27]   Therefore, Defendant's Motion to Suppress is **GRANTED**.

**IT IS SO ORDERED.**

Vivian L. Medinilla
Judge

oc:   Prothonotary
cc:   Defendant
      Jeffrey M Rigby, Esquire
      Benjamin S. Gifford, IV, Esquire
      Investigative Service Office

---

[27] *See Wong Sun v. United States*, 371 U.S. 471 (1963).