# IN THE SUPERIOR COURT OF THE STATE OF DELAWARE

STATE OF DELAWARE     )
                               )

      v.                 )     I.D. No. 1806009479
                               )     In and for Kent County

THOMAS BOLDEN,        )
                               )

      Defendant.      )

## ORDER

Submitted: March 15, 2019
Decided: March 19, 2019

***Upon Defendant's Motion to Suppress***
**DENIED**

Before the Court is the Motion to Suppress of Defendant Thomas Bolden (hereinafter "Mr. Bolden"). Mr. Bolden seeks to suppress all evidence resulting from an administrative search of room 110 at the Dover Inn in Dover, Delaware (hereinafter "the Hotel Room"). After considering the parties' written submissions, and the evidence and argument presented at the hearing on March 15, 2019, the Court has determined that the Motion to Suppress should be **DENIED**.

### Factual Background

In September 2018, Senior Probation Officer Rick Porter (hereinafter "SPO Porter") conducted an investigation into the defendant, Mr. Bolden, after receiving information from a confidential source (hereinafter "CI") that Mr. Bolden was in possession of a silver and black handgun. The CI, a cooperating defendant, informed SPO Porter that Mr. Bolden was staying at the Dover Inn, located at 248 North DuPont Highway in Dover, Delaware, and that Mr. Bolden was keeping the gun in a black and red backpack. SPO Porter knew Mr. Bolden to be on Level 3 probation and to be a person prohibited from possessing firearms. SPO Porter also knew that Mr. Bolden had been claiming to be homeless for several weeks, and

that he had not informed his probation officers that he was staying at the Dover Inn, in violation of his probation.

SPO Porter spoke with U.S. Marshal's Task Force Officer Michael Willson, who advised SPO Porter that he had seen Mr. Bolden in the area of the Dover Inn the week prior. SPO Porter traveled to the Dover Inn and, upon arrival, observed Mr. Bolden leaving the hotel parking lot on a bicycle.

SPO Porter then made contact with the manager of the Dover Inn, Ms. Edna Hayes. SPO Porter showed Ms. Hayes a photo of the defendant, which she was able to positively identify as Mr. Bolden, and she confirmed that he was, indeed, staying at the hotel in the Hotel Room. SPO Porter was advised that the Hotel Room was registered to co-defendant, Bobby Pitts. Ms. Hayes stated that Mr. Bolden had been staying in the Hotel Room for approximately two weeks and had paid for the room daily in cash. SPO Porter then reviewed the hotel surveillance video and positively identified Mr. Bolden departing the Hotel Room prior to leaving the hotel area on his bicycle.

SPO Porter subsequently contacted Supervisor Willoughby of Dover Probation and Parole and reviewed the criteria for approval of an administrative search set forth in Probation and Parole Procedure 7.19. The information that SPO Porter reviewed with Supervisor Willoughby included the tip from the CI, the efforts to corroborate the tip, and Mr. Bolden's apparent violation of his probation by reporting himself homeless while residing in the Hotel Room. Supervisor Willoughby approved the administrative search.

SPO Porter, along with officers from the Dover Police Department, subsequently contacted Mr. Bolden in the area of South New Street in downtown Dover. Mr. Bolden was taken into custody and transported to the Hotel Room, where the administrative search of the room proceeded.

Upon entering the Hotel Room, SPO Porter and a Dover police officer, Detective Johnson, made contact with Derrick Wilcox. The officers smelled the odor of marijuana in the room and observed a marijuana blunt and packaging materials in plain view. SPO Porter began his administrative search and located a firearm in a desk drawer near where Mr. Wilcox had been seated. Mr. Wilcox advised that the gun was registered and belonged to Mr. Pitts.

SPO Porter continued with the administrative search and located a red and black Phillies backpack, which matched the description of the bag given by the CI as belonging to Mr. Bolden. Inside the bag, SPO Porter discovered a silver and black handgun, also matching the description given by the CI, along with a rifle magazine containing 30 rounds of ammunition. Other contraband was found in the room as well.

**Legal Standard**

Probationers, as part of their criminal sanctions, do not share the same liberties as ordinary citizens.[1] Rather, probation is to serve as a criminal sanction,[2] and "[t]he special nature of probationary supervision justifies a departure from the usual warrant and probable cause requirements for searches...."[3] A warrantless search of a probationer's home, nevertheless, must be "reasonable,"[4] and it has been long settled in Delaware that "suspicionless" searches of probationers are unlawful.[5] As a result, Delaware follows the "reasonable suspicion" standard in justifying searches of probationers.[6] "Reasonable suspicion" exists when the

---

[1] *Sierra v. State*, 958 A.2d 825, 828 (Del. 2008); *Donald v. State*, 903 A.2d 315, 318-19 (Del. 2006).
[2] *State v. Harris*, 734 A.2d 629, 634 (Del. Super. 1998).
[3] *Sierra*, 958 A.2d at 828.
[4] *Id.*
[5] *Id.* at 829.
[6] *Id.*

"totality of the circumstances" indicate a "particularized and objective basis" for suspecting a probationer of wrongdoing.[7]

Title 11, section 4321(d) of the Delaware Code grants probation and parole officers in Delaware with certain statutory authority to effectuate warrantless searches of probationers.[8] The regulations enacted pursuant to that statute provide that "absent exigent circumstances, a probation and parole officer must obtain the approval of a supervisor, manager or director before conducting a search."[9] Moreover, absent exigent circumstances, the officer and supervisor should generally hold a case conference using the search checklist as a guideline.[10] The search checklist lays out the various factors to consider when determining whether to perform an administrative search and includes:

> (1) The Officer has knowledge or sufficient reason to believe [that] the offender possesses contraband;
> (2) The Officer has knowledge or sufficient reason to believe [that] the offender is in violation of probation or parole;
> (3) There is information from a reliable informant indicating [that] the offender possesses contraband or is violating the law;
> (4) The information from the informant is corroborated;
> (5) Approval for the search has been obtained from a Supervisor.[11]

With regard to the third and fourth factors above, where an informant is involved, Procedure 7.19 also requires the probation officer to consider: (1) the detail of the information received from the informant, (2) the consistency of the information, (3) the reliability of the informant in the past, and (4) the reasoning behind why the informant would supply the information.[12] "[I]f a tip has a

---

[7] *Id.* at 828 (quoting *United States v. Arvizu*, 534 U.S. 266, 273 (2002)).

[8] 11 *Del. C.* § 4321(d); *see also* Delaware Department of Correction Bureau of Community Corrections Probation and Parole Procedure No. 7.19 (amended effective June 5, 2001).

[9] *Sierra*, 958 A.2d at 829 (citing Procedure No. 7.19).

[10] *Id.*

[11] *Id.*

[12] *Culver v. State*, 956 A.2d 5, 10 (Del. 2008).

relatively low degree of reliability, more information will be required to establish the requisite quantum [of suspicion] than would be required if the tip were more reliable."[13] However, if the officers are able to corroborate substantial aspects of the tip, such as information pertaining to the defendant's future movements, which are "ordinarily not easily predicted," then that tip will be considered to have a "sufficient indicia of reliability."[14]

## Discussion

As stated above, an administrative search of a probationer's home or residence requires only "reasonable grounds," and may still be valid even if the probation officer does not satisfy each and every technical requirement of the search and seizure regulations of the Department of Correction.[15] The purpose of the regulations governing searches of probationers is "…to ensure that [Probation] has sufficient grounds before undertaking a search. The individual procedures advance that goal but are *not independently necessary*, as demonstrated by the fact that the regulations explicitly state exceptions for when the search checklist need not be used."[16] Rather, "…*substantial* compliance with departmental regulations is satisfactory evidence of reasonableness in Delaware."[17]

In this case, the Court finds that the administrative search was validly performed, and that the officers have demonstrated substantial compliance with the regulations and guidelines as laid out by Section 4321(d) and Procedure No. 7.19. Moreover, the Court finds that the additional factors to be considered where an informant is involved have also been met, as the tip was sufficiently detailed, consistent, and reliable, and was independently corroborated by SPO Porter.

---

[13] *LeGrande v. State*, 947 A.2d 1103, 1109 (Del. 2008) (internal quotations omitted).
[14] *State v. Caulk*, 2015 WL 5320165, at *3 (Del. Super. Sept. 14, 2015). *See also Fuller v. State*, 844 A.2d 290, 292 (Del. 2004).
[15] *Donald*, 903 A.2d at 319.
[16] *Fuller*, 844 A.2d at 293.
[17] *Pendleton v. State*, 990 A.2d 417, 420 (Del. 2010) (emphasis in original).

Looking first to the reliability of the confidential source's tip, the information was sufficiently detailed and consistent, and provided information that was not readily observable to the average person, indicating that the source had actual knowledge of illegal activity taking place. The CI informed SPO Porter that Mr. Bolden was in possession of a firearm. The CI described the firearm with specificity and indicated that the firearm could be found in a black and red backpack belonging to Mr. Bolden. Additionally, the CI advised SPO Porter that Mr. Bolden was staying at the Dover Inn and that the firearm and backpack could be found in Mr. Bolden's hotel room. The CI's tip was also consistent with information supplied by Officer Willson, namely, that Mr. Bolden had been seen in the vicinity of the Dover Inn.

While the CI in this case was not past proven reliable, this did not preclude the State from relying upon the tip, particularly where, as here, SPO Porter corroborated key aspects of the tip, including information about Mr. Bolden's residence at the Dover Inn, which he had not reported to Probation and Parole.[18] Moreover, while the evidence presented to the Court does not reflect whether SPO Porter specifically discussed with his supervisor the reason why, as a cooperating defendant, he would supply the information, this is not a situation, as in *Culver*, where an anonymous informant provided vague information that law enforcement failed to corroborate before conducting the administrative search.[19]

---

[18] As the Delaware Supreme Court has noted, the tip from the informant must constitute information "that the probationer or parolee possesses contraband, *is in violation of probation* or parole, or is violating the law." *Sierra*, 958 A.2d at 829 (emphasis supplied). Here, while SPO Porter may not have corroborated Mr. Bolden's actual possession of contraband prior to the administrative search, he had certainly gathered substantial evidence that Mr. Bolden was residing at the Dover Inn without reporting that fact to probation authorities, thus violating the terms of his probation.

[19] 956 A.2d 5 at 14 (the Court found that "the probation officers improperly relied on conclusory, inconsistent, and unreliable information that cannot sustain a reasonable suspicion to search Culver's home").

Looking to the remaining factors to consider when determining whether to perform an administrative search, the Court finds that SPO Porter sufficiently complied with the checklist from Procedure 7.19. Recapping the facts once again, SPO Porter was contacted by a confidential source who advised him that Mr. Bolden was in possession of a firearm, that Mr. Bolden was staying at the Dover Inn, and that the firearm could be found in Mr. Bolden's red and black backpack in his hotel room. SPO Porter then verified and corroborated this information in several ways. SPO Porter spoke with Officer Willson who advised that he had seen Mr. Bolden in the area of the Dover Inn the week prior. Additionally, SPO Porter contacted the Dover Inn's manager, Ms. Hayes. SPO Porter showed Ms. Hayes a photo of Mr. Bolden and confirmed that he was staying at the Dover Inn in the Hotel Room, that he had been staying in the Hotel Room for approximately two weeks, and that he had paid cash for the room each day. Moreover, through the hotel surveillance video, SPO Porter was able to identify Mr. Bolden departing the Hotel Room prior to leaving the area on his bicycle, and SPO Porter personally observed Mr. Bolden leaving the hotel parking lot upon his arrival at the Dover Inn.

Based upon the above information, the Court finds that SPO Porter had sufficient reason to believe that Mr. Bolden possessed contraband (specifically a firearm) and that he was in violation of his probation. SPO Porter knew Mr. Bolden to be on Level 3 probation and to be a person prohibited from possessing firearms. With regard to violating his probation, SPO Porter also indicated that he knew Mr. Bolden to have been claiming to be homeless for several weeks, and that he had not informed his probation officers that he was staying at the Dover Inn. Lastly, SPO Porter conferred with his supervisor about the checklist and obtained approval from him prior to conducting the administrative search.

7

Therefore, the Court finds that the officers fully complied with the procedures governing searches of probationers and that the resulting administrative search of the Hotel Room was reasonable and lawful: (1) SPO Porter had sufficient reason to believe that Mr. Bolden was in possession of contraband; (2) SPO Porter had sufficient reason to believe Mr. Bolden was in violation of his probation; (3) the information from the CI was reliable and indicated that Mr. Bolden possessed contraband and was in violation of his probation; (4) the information from the CI was independently corroborated by SPO Porter; and (5) SPO Porter obtained approval from his supervisor prior to performing the administrative search.

**WHEREFORE**, for the foregoing reasons, Mr. Bolden's motion to suppress is **DENIED**.

**IT IS SO ORDERED**.

/s/ Noel Eason Primos
Judge

NEP/dsc
oc:   Prothonotary
cc:   Sean A. Motoyoshi, Esq.
      Andre M. Beauregard, Esq.