IN THE SUPREME COURT OF THE STATE OF DELAWARE

| | | |
|---|---|---|
| AL-GHANIYY PRICE, | § | |
| | § | No. 228, 2024 |
| Defendant Below, | § | |
| Appellant, | § | Court Below: Superior Court |
| | § | of the State of Delaware |
| v. | § | |
| | § | Cr. ID No. 2212010900 (N) |
| STATE OF DELAWARE, | § | Cr. ID No. 2306000465 (N) |
| | § | |
| Appellee. | § | |

Submitted: March 18, 2025
Decided: April 29, 2025

Before **SEITZ**, Chief Justice; **VALIHURA, TRAYNOR**, **LEGROW**, **GRIFFITHS**, Justices, constituting the Court *en Banc*.

## ORDER

The Court, having considered the briefs and record on appeal, and after oral argument, rules as follows:

(1)   In the early morning hours, a 911 caller reported a suspicious car and driver – appellant Al-Ghaniyy Price – idling for over an hour outside a home in a residential neighborhood.  The caller felt unsafe and thought the driver might be "casing houses" in the neighborhood.   Five officers arrived at the scene.  After surveying the situation, an officer believed, based on the circumstances and his experience, that the individual might be involved in stealing cars or robbing houses.

(2)     After parking the police cars around the suspect car, the officers approached Price's driver-side window.  The car door opened a crack, and the officer saw an object – believed to be heroin – drop out of the driver's door.  Police took Price into custody.  The object dropped from the car turned out to be heroin.  A subsequent search of Price's car turned up further contraband.

(3)     The Superior Court denied a motion to suppress the drug evidence found during the encounter with Price.  A jury convicted Price on drug charges.  The court sentenced him to an aggregate of ten years at Level 5 incarceration followed by decreasing levels of supervision.

(4)     On appeal, Price argues that the drug evidence found during the search should have been suppressed because the police lacked objective and specific facts linking Price or his car to any criminal activity when the officers seized him.  We disagree and affirm Price's convictions.

(5)     Late at night on December 27, 2022, five New Castle County Police Department officers responded to a 911 call.[1]  The caller reported that an unknown driver had been sitting in a white Jeep Cherokee outside a house with the engine running for over an hour.[2]  He described the individual's complexion, gender, age,

---

[1] App. to Appellant's Opening Br. at A38 [hereinafter A__] (Tr. at 6:21–23).

[2] App. to State's Answering Br. at B1 [hereinafter B__] (911 Call at 01:03–01:08).

facial hair, clothing, height, and hairline.[3]  He also provided the vehicle's license plate number.[4]  The caller recalled seeing the same vehicle a week earlier and that, by the time he called it in and the police arrived, the driver had left.[5]  The caller stated that he was unsure if the driver was "casing houses" and that he did not feel safe.[6]

(6)      Five uniformed officers arrived in three marked police cars.[7]  Some of the officers were trainees.  One police car parked directly behind Price's car, while another parked directly in front of Price's car.[8]  A third police car parked on the opposite side of the residential street facing Price's car.[9]  The police cars did not turn on their emergency lights and sirens, but their headlights faced Price's car.[10]  One of the officers, Officer Kyle Webb, saw Price open his driver's side door and drop an

---

[3] *Id.* (911 Call at 00:29–00:39, 02:11–02:40).

[4] *Id.* (911 Call at 01:09–01:22).

[5] *Id.* (911 Call at 00:50–01:03).

[6] *Id.* (911 Call at 00:39–00:48).

[7] A38 (Tr. at 6:10–13); B2 (Body Worn Camera Video of Officer Bochanski at 02:22:20); B3 (Body Worn Camera Video of Officer Webb at 02:23:09); B4 (Body Worn Camera Video of Officer Ivory at 02:22:01).

[8] B4 (Body Worn Camera Video of Officer Ivory at 02:22:01–02:22:26).

[9] *Id.*

[10] *Id.*

object onto the street.[11]  Officer Webb suspected that the dropped object was heroin, which was confirmed when he got closer.[12]

(7)    Several officers approached Price's car and shined their flashlights at it.[13]  The officers told Price to "roll all [the] windows down," but he instead moved the car forward.[14]  The officers shouted for Price to "stop" and again to "roll [the] windows down," which he did.[15]  The officers instructed Price to step out of his car, placed him under arrest, and searched Price's car.[16]  The search turned up drug contraband.

(8)    The State charged Price with five counts of drug dealing, one count of drug possession, and one count of possession of drug paraphernalia.  Price moved to suppress the evidence.  Price argued that he was seized when police first approached him and that the police lacked reasonable grounds for seizing him.

---

[11] A39 (Tr. at 11:05–09); B3 (Body Worn Camera Video of Officer Webb at 02:22:18–2:22:25).

[12] A40 (Tr. at 14:06–09).

[13] B3 (Body Worn Camera Video of Officer Webb at 02:22:25); B4 (Body Worn Camera Video of Officer Ivory at 02:22:19).

[14] B2 (Body Worn Camera Video of Officer Ivory at 02:22:28–02:22:32).

[15] *Id.* (Body Worn Camera Video of Officer Ivory at 02:22:32–02:22:36).

[16] *Id.* (Body Worn Camera Video of Officer Ivory at 02:23:10–02:27:28).

(9)  The Superior Court denied the motion to suppress.[17]  The court held that Price was not seized when police approached his car.[18]  Instead, the seizure occurred no earlier than when police instructed Price to roll down his windows.[19] According to the court, "the fact that the police officers were parked very far away, that they were approaching on foot, the fact they had flashlights does not give . . . any greater weight to [the approach] being a seizure[.]"[20]  The court also held that, in any event, the police had reasonable grounds for seizing Price when they parked their police cars around Price's car based on (1) the 911 call and Officer Webb's knowledge and experience,[21] as well as (2) Price was parked illegally.[22]

(10)  A Superior Court jury convicted Price of drug dealing heroin, possession of heroin, possession of cocaine, possession of drug paraphernalia, and possession or consumption of marijuana in a vehicle.  He was sentenced to ten years of incarceration followed by decreasing levels of probation.

---

[17] A57 (Tr. at 83:03–05).

[18] A56 (Tr. at 79:01–04).

[19] *Id.* (Tr. at 78:20–23).

[20] *Id.* (Tr. at 79:08–12).

[21] *Id.* (Tr. at 79:13–17).

[22] A56–57 (Tr. at 80:07–81:04).

(11)   On appeal, Price argues that the Superior Court erred by denying his suppression motion.[23]   Price contends that the police seized him as soon as they arrived on scene and approached him.[24]   He also contends that the 911 call did not provide police with reasonable grounds to seize him.[25]   Finally, he argues that his parking violation could not support the unlawful seizure.[26]   We review a denial of a motion to suppress for abuse of discretion,[27] underlying findings of fact for clear error,[28] and legal conclusions *de novo*.[29]

(12)   "An individual's right to be free of unlawful searches and seizures in Delaware is secured by two independent, though correlative sources."[30]   The Fourth Amendment to the United States Constitution protects "[t]he right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures. . . ."[31]   Article I Section 6 of the Delaware Constitution protects

---

[23] Appellant's Opening Br. at 23.

[24] *Id.* at 10.

[25] *Id.* at 17.

[26] *Id.* at 20.

[27] *Juliano v. State*, 254 A.3d 369, 376 (Del. 2020).

[28] *Anderson v. State*, 249 A.3d 785, 795 (Del. 2021).

[29] *Juliano*, 254 A.3d at 376.

[30] *Register v. State*, 2024 WL 5162047, at *6 (Del. Dec. 19, 2024) (quoting *Jones v. State*, 745 A.2d 856, 860 (Del. 1999)).

[31] U.S. CONST. amend. IV.

"persons, houses, papers and possessions[] from unreasonable searches and seizures. . . ."[32]  An Article I seizure occurs "when a reasonable person would have believed he or she was not free to ignore the police presence."[33]

(13)  Here, five uniformed police officers, some of whom were trainees, responded in three marked police cars.[34]  The officers parked their cars in front of, behind, and diagonal to Price's car.[35]  The police did not activate the emergency lights and sirens but trained their headlights on Price's car.[36]  At least four of the officers immediately exited their cars and approached Price.[37]  Several of those officers shined their flashlights towards Price's car.[38]  Based on the totality of these circumstances, we conclude that a reasonable person would not have believed that he or she was free to ignore the police when they surrounded Price's car with the three police cars.

---

[32] DEL. CONST. art. I, §6.

[33] *Jones*, 745 A.2d at 869 (Del. 1999).

[34] A38 (Tr. at 6:10–13); B2 (Body Worn Camera Video of Officer Bochanski at 02:22:20); B3 (Body Worn Camera Video of Officer Webb at 02:23:09); B4 (Body Worn Camera Video of Officer Ivory at 02:22:01).

[35] B4 (Body Worn Camera Video of Officer Ivory at 02:22:01–02:22:26).

[36] *Id.*

[37] Officer Webb testified that one of the five responding officers, Officer Casey Bolden, initially remained in his car.  A47–48 (Tr. at 44:21–45:01).

[38] B3 (Body Worn Camera Video of Officer Webb at 02:22:25); B4 (Body Worn Camera Video of Officer Ivory at 02:22:19).

(14) The State argues that, under *Williams v. State*, "law enforcement officers are permitted to initiate contact with citizens on the street for the purpose of asking questions."[39] In *Williams*, an officer stopped his patrol car to check on a man walking down a highway median during a cold and windy night.[40] After a brief conversation where the man shared his name and birthdate, the two parted ways.[41] The officer ran the information on his computer system.[42] Upon discovering that the man had an outstanding arrest warrant, the officer approached the man again and placed him under arrest.[43] We held that the officer's initial approach was not a seizure because a reasonable person would have considered the encounter voluntary and would have believed that he was free to ignore the police presence.[44]

(15) Here, by contrast, several uniform officers responded to the scene in marked police cars. Although the police cars were not parked so tightly that they "boxed" in Price's car or otherwise made the road inaccessible, they were parked in a manner that would prompt a reasonable person to feel that he or she was not free

---

[39] 962 A.2d 210, 215 (Del. 2008) (citations omitted).

[40] *Id.* at 213.

[41] *Id.*

[42] *Id.*

[43] *Id.*

[44] *Id.* at 216.

to drive away. In addition, at least four officers approached Price on foot, and several shined their flashlights at Price's car. Even if the officers did not simultaneously "surround" Price's car or issue verbal commands, such an overt deployment of force would lead a reasonable person to feel that he or she was not free to ignore the officers and leave. Price was seized when the police first approached his car.

(16) For a seizure to be lawful, police must have "reasonable ground" to suspect that the individual is, or is about to be, engaged in criminal activity.[45] "Reasonable ground" means "reasonable articulable suspicion."[46] To determine reasonable suspicion, we evaluate "the context of the totality of the circumstances as viewed through the eyes of a reasonable, trained police officer in the same or similar circumstances, combining objective facts with such an officer's subjective interpretation of those facts."[47]

(17) In the particular circumstances of this case, we are satisfied that the State met its burden to demonstrate a reasonable suspicion of criminal activity when they parked around and approached Price's car. The officers were responding to a 911 call reporting that a driver was in a car that was idling in front of a house in a

---

[45] 11 *Del. C.* § 1902.

[46] *Miller v. State*, 922 A.2d 1158, 1161 (Del. 2007) (citing *Jones*, 745 A.2d at 861).

[47] *Register*, 2024 WL 5162047, at *7 (quoting *Jones*, 745 A.2d at 861).

residential neighborhood for over an hour at 2 o'clock in the morning.[48]  The officers were informed that "the vehicle wasn't regular to the area."[49]  Based on the officer's experience in "similar situations where occupants were engaged in theft of vehicles in the area, or even burglary," police had reasonable suspicion that criminal activity might be afoot.[50]  Thus, under the particular circumstances of this case, police had reasonable ground for seizing Price.  The seizure was not unlawful.

NOW, THEREFORE, IT IS HEREBY ORDERED that the judgment of the Superior Court is AFFIRMED.

BY THE COURT:

*/s/ Collins J. Seitz, Jr.*
Chief Justice

---

[48] A38 (Tr. at 8:07–10).

[49] A38 (Tr. at 8:07–08).

[50] A38 (Tr. at 8:16–21).